**CALLOWHILL CENTER ASSOCIATES, LLC,**
Appellant

v.

**ZONING BOARD OF ADJUSTMENT, City of Philadelphia, Society Created to Reduce Urban Blight, Northern Liberties Neighbors Association, Old City Civic Association, Mary Tracy and John Struble.**

Commonwealth Court of Pennsylvania.

Argued May 18, 2010.

Decided Aug. 9, 2010.

John Mattioni, Philadelphia, for appellant.

Elise Bruhl, Philadelphia, for appellee, City of Philadelphia.

Samuel C. Stretton, West Chester, for appellees, SCRUB, Northern Liberties Neighbors Association, Old City Civic Association, Mary Tracy and John Struble.

BEFORE: SIMPSON, Judge, McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Callowhill Center Associates (Callowhill) appeals from the July 6, 2009, order of the Court of Common Pleas of Philadelphia (trial court), which affirmed an order of the Zoning Board of Adjustment of the City of Philadelphia (Board) denying Callowhill's second application for a variance to install a wall wrap advertising sign. We affirm.

Callowhill owns a commercial building located at 413–53 North 7th Street in Philadelphia, which houses twenty-two business tenants and is 60–65% occupied. Callowhill wishes to install a 9,750 square foot wall wrap advertising sign on its building. (Callowhill's brief at 8; Reproduced Record (R.R.) at 463a.) The wall wrap adver-

tising sign proposed by Callowhill would be constructed of polyester fabric and placed over the exterior of the building. (Callowhill's brief at 8.)

Section 14–102(123) of the Philadelphia Code (Code)[1] defines the term sign as follows:

*Sign.* A name, identification, description, emblem, display, device or structure which is affixed to, or printed on, or represented directly or indirectly upon a building, structure, or parcel of land; which is illuminated or non-illuminated; visible or intended to be visible from any public place; and which directs attention to a person, place, product, institution, business, organization, activity or service. Signs shall also include any permanently installed or situated merchandise, including any banner, pennant, placard or temporary sign, with the exception of window displays and national flags . . . .

Section 14–1604 of the Code provides that the maximum area of a sign is limited to 1,500 square feet and that the bottom edge of any outdoor advertising sign may not be located more than twenty-five feet above the road surface.

Callowhill's building is located in the L–4 Limited Industrial District, where outdoor advertising signs are not a permitted use. Section 14–506(1)(a)(.2) of the Code. Furthermore, the property is situated in the Vine Street Parkway Special Sign Control Area, where the City has imposed strict sign control regulations. Section 14–1604.1(5) of the Code.

In 1999, Callowhill erected a 9,750 square foot non-accessory wall wrap sign on its building without first acquiring a zoning and use permit. The wall wrap sign, as with all such similar signs, had the practical effect of transforming an entire side of Callowhill's building into a sign, as illustrated by the following photograph, taken in May of 2000, of the wall wrap sign that was installed on the building:

---

**1.** The definition of "sign" was previously found at section 14–102(86) of the Code.

(R.R. at 1122a.) When Callowhill finally applied for such a permit one year later, its request was rejected by the City. Callowhill then applied to the Board for a variance. The variance, which was opposed by the Society Created to Reduce Urban Blight (SCRUB), was granted by the Board. However, the trial court reversed the Board's decision on the ground that Callowhill did not prove an unnecessary hardship. This Court affirmed, reasoning as follows:

> [W]e conclude that the Board erred as a matter of law by granting the variance when Applicants did not demonstrate the required showing of unnecessary hardship. As noted, the building was 70 to 80% occupied by commercial tenants when the sign was erected. The building is being put to a profitable use, and the loss of the sign revenue does not render the building valueless. Because we conclude that Applicants did not prove the required hardship, we need not determine whether a variance would be contrary to the public interest.

Alternatively, Applicants argue that a variance is not necessary because the zoning code does not apply to their sign. They assert that their sign is a wall wrap, which drapes the side of the building like a banner. They claim that the zoning code applies only to billboards. Reference to the definition section of the zoning code demonstrates that this argument lacks merit. The term "sign" is defined as follows:

> A name, identification, description, emblem, display or structure which is affixed to, or printed on, or represented directly upon a building, structure or parcel of land.

Phila. Code § 14–102(86). Our review of the record reveals that Applicants' sign falls within that definition.

*Society Created to Reduce Urban Blight v. Zoning Board of Adjustment,* 804 A.2d 116, 120 (Pa.Cmwlth.)(*Callowhill I*), appeal denied, 572 Pa. 727, 814 A.2d 679 (2002), *cert. denied, Callowhill Center Associates, LLP v. Society Created to Reduce Urban Blight,* 539 U.S. 903, 123 S.Ct. 2247, 156 L.Ed.2d 111 (2003).[2] In that prior proceeding, Callowhill also challenged the constitutionality of the Code as a prior restraint on commercial speech and as exclusionary zoning; however, the *Callowhill I* Court concluded that those arguments were waived because they were never raised before the Board. *Id.,* 804 A.2d at 119.

The instant litigation commenced on July 22, 2005, when Callowhill applied for a zoning/use registration permit to erect a 9,750 square foot non-accessory wall wrap sign on its property. The permit was denied, and Callowhill appealed to the Board arguing that: (1) the Code creates an unreasonable hardship; (2) the Code is unconstitutional because it is *de jure* and *de facto* exclusionary and restricts its freedom of expression; and (3) a variance permitting the wall wrap sign will not have an adverse impact on the public. The Board conducted hearings in 2006, and SCRUB and other community groups participated in the hearings and submitted evidence in opposition to Callowhill's application. After review, the Board denied the variance request, finding that Callowhill did not

prove that it was entitled to a variance, that this Court's decision in *Callowhill I* was *res judicata,* and that Callowhill's constitutional challenge was without merit.

Callowhill appealed the Board's decision to the trial court. The trial court concluded that the Board correctly denied the variances and correctly concluded that the Code was constitutional and enforceable. This appeal followed.[3]

Before reaching the merits of this matter, we first consider Callowhill's motion to quash or dismiss the participation in this appeal by SCRUB, Northern Liberties Neighbors Association, Old City Civic Association, and Mary Tracy and John Struble (collectively, the Civic Groups) in light of our Supreme Court's recent decision in *Spahn v. Zoning Board of Adjustment,* 602 Pa. 83, 977 A.2d 1132 (2009).

In *Spahn,* our Supreme Court examined the impact of section 17.1 of the First Class City Home Rule Act (Home Rule Act) on section 14–1807(1) of the Code. Section 14–1807 Code contains the following relevant provisions regarding zoning appeals:

> (1) Any person or persons jointly or severally aggrieved by any decision of the Board, *or any taxpayer,* or any officer, department, board or bureau of the City, may appeal by presenting to the Court

---

**2.** Despite this Court's order in *Callowhill I* determining that the wall wrap sign was illegal and must be removed, Callowhill's wall wrap sign remained in place. *See City of Philadelphia v. Berman and Callowhill Center Associates,* 863 A.2d 156 (Pa.Cmwlth.2004). The City responded by filing an equity action to have the sign removed. Although the trial court ordered the wall wrap removed, this Court vacated that order due to procedural errors and remanded the case for further proceedings. *Id.* It appears, however, that the City ultimately removed the sign. (R.R. at 373a–74a.)

**3.** Where, as here, the trial court has not taken additional evidence, this Court's scope of review is limited to determining whether the zoning board abused its discretion or committed an error of law. *Arter v. Philadelphia Zoning Board of Adjustment,* 916 A.2d 1222 (Pa.Cmwlth.2007.) A zoning board abuses its discretion if its findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might consider as adequate to support a conclusion. *Id.*

of Common Pleas a Notice of Appeal setting forth the date of the decision by the Board, the calendar number of the case before the Board, and the address of the property involved, and attaching a copy of the decision from which the appeal is being taken. . . .

(2) The Zoning Board of Adjustment, the City of Philadelphia, and the applicant before the Board (if not the appellant) shall be named as appellees in said appeal, with the right to appear by counsel, or in the case of the applicant before the Board, in person or by counsel, and defend such action. *All parties that entered an appearance in the proceedings before the Zoning Board of Adjustment may intervene in the appeal as of right* by filing with the Prothonotary a Praecipe to Intervene within thirty (30) days of the date of service of the Notice of Appeal. *The Court may permit any other person or persons claiming an interest to assert his, her or their right by intervention.*

(Emphasis added.)

In 2004, the General Assembly added section 17.1 of the Home Rule Act, 53 P.S. § 13131.1,[4] which conflicted with the language in section 14–1807(1) of the Code providing generally for taxpayer standing. Section 17.1 provides as follows:

In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, *the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zon-*

*ing hearing board* or other board or commission created to regulate development.

53 P.S. § 13131.1 (emphasis added).

The Supreme Court held in *Spahn* that the Home Rule Act was controlling and took precedence over the grant of taxpayer standing in 14–1807(1) of the Code. The Court observed that the Legislature incorporated into the statute the concept of standing as articulated in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), and applying *William Penn,* the Supreme Court concluded that the civic/community groups in that case, including SCRUB, were not aggrieved parties and did not have standing to appeal:

Our resolution of this final issue is straightforward. As we have concluded that Section 17.1 incorporated the concept of standing as set forth in *William Penn,* we turn to *William Penn* for guidance on this question. Under *William Penn,* a party is aggrieved if the party can show an interest that is substantial, direct, and immediate. *Id.* at 280. In order to be substantial, there must be some discernible effect on some interest other than the abstract interest all citizens have in the outcome of the proceedings. *Id.* at 282. In order to be direct, the party must show some causation of harm to his interest. *Id.* In order to be immediate, there must be a causal connection between the action complained of and the injury to the person challenging it. *Id.* at 282–83. Thus, for example, we concluded that an alumni association of a charitable school did not have standing to challenge the Board of Directors' management of a

---

**4.** Act of April 21, 1949, P.L. 65, *as amended.* Section 17.1 was added by section 2 of the

Act of November 30, 2004, P.L. 5123.

charitable trust, since the litigation would not affect the Association itself; "it los[t] nothing and gain[ed] nothing" by the outcome of the litigation. *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1263 (Pa.2006). Similarly, we held that potential applicants for slot machine gaming licenses did not have standing to bring a facial constitutional challenge to the Gaming Act, 4 Pa.C.S. § 1101 et seq., because they did not establish that their interest in the outcome was greater than that of any other citizen and they did not assert that the challenged section harmed them personally in any way. *See Pittsburgh Palisades Park, LLC v. Commonwealth of Pennsylvania,* 585 Pa. 196, 888 A.2d 655, 660 (Pa.2005).

Applying these concepts to the instant matters, appellants have not demonstrated an interest greater than any other citizen of Philadelphia. Regarding the civic associations' appeal at 28 EAP 2008, *the associations essentially admit that their purpose in bringing the action is to enforce zoning provisions of the Philadelphia Zoning Code, oppose the erection of illegal billboards, and foster community development. These purposes while laudable, are no different from the abstract interest that all citizens have in the outcome of the proceedings.* Additionally, although appellants claim that they have members who live in the "vicinity" of the proposed sign, these members reside over a mile from the proposed sign. Under such facts, appellants cannot establish that

they have standing as an aggrieved party.

*Spahn,* 602 Pa. at 115–116, 977 A.2d at 1151–52 (footnote omitted) (emphasis added).

Thus, the holding in *Spahn* prevents taxpayers from filing appeals unless they are able to satisfy the standard articulated in *William Penn* and demonstrate an interest in the matter that is greater than any other citizen of Philadelphia.

However, unlike the civic associations in *Spahn,* the Civic Groups here are not appellants, and they never filed an appeal in this litigation at the Board or trial court level to enforce the Code. Callowhill was the appellant at every stage of the proceedings.

Most important, neither *Spahn* nor section 17.1 of the Home Rule Act affected section 14–1807(2 ) of the Code, which permits parties who appeared before the Board to intervene *as of right* in an appeal to the trial court. The record demonstrates that the Civic Groups entered appearances before the Board, were represented by counsel, and actively participated in the proceedings before the Board. After Callowhill appealed the Board's decision, the Civic Groups complied with section 14–1807(2) of the Code by filing a praecipe to intervene with the trial court, and they actively participated in those proceedings.[5] Therefore, we conclude that *Spahn* is not controlling, and we deny Callowhill's motion to quash.

**5.** During the trial court proceedings, Callowhill moved to quash the intervention or dismiss the Civic Groups from the case. By an opinion and order dated October 23, 2007, the trial court granted Callowhill's motion and dismissed their intervention. (R.R. at 95a–96a.) However, on November 1, 2007, the trial court granted reconsideration and vacated the October 23, 2007, order. (R.R. at

97a.) The order also remanded the case to the Board for development of a record on the Civic Groups' standing, but the Board never complied with the order. (R.R. at 326a.) Ultimately, the trial court entered an order deferring the question of standing, and the Civic Groups continued to actively participate in the appeal proceedings. (R.R. at 340a.)

Turning to the merits, Callowhill contends that: (1) the Board's decision denying its request for a variance is unsupported by substantial evidence; and (2) that the Code is unconstitutional for the reasons that it is *de jure* and *de facto* exclusionary and infringes upon the right of freedom of expression.[6] In response, the City and the Civic Groups argue that Callowhill is precluded from raising these issues by the doctrine of *res judicata.*

■ Pennsylvania courts generally apply *res judicata* narrowly in zoning matters, because the need for flexibility outweighs the risk of repetitive litigation. *Price v. Bensalem Township Zoning Hearing Board,* 131 Pa.Cmwlth. 200, 569 A.2d 1030 (1990). Nevertheless, *res judicata* will bar relitigation of a request for a variance if four elements concur: (1) the identity of the thing sued for; (2) the identity of the cause of action; (3) the identity of the persons and parties to the action; and (4) the identity of the quality in the persons for or against whom the claim is made, and then, only if there are no substantial changes in circumstances relating to the land itself. *Id.* Furthermore, *res judicata* is conclusive not only to matters decided but also as to matters that *could have been, or should have been,* raised and decided in the prior case. *Merkel v. Workers' Compensation Appeal Board (Hofmann Industries),* 918 A.2d 190 (Pa.Cmwlth.2007); *Namcorp, Inc. v. Zoning Hearing Board,* 125 Pa.Cmwlth. 496, 558 A.2d 898 (1989).

■ In addition, the doctrine of *res judicata* subsumes the doctrine of collateral estoppel, which forecloses re-litigation in a later action of an issue of fact or law that was actually litigated and was necessary to the original judgment. *City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 559 A.2d 896 (1989). Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Id.*

■ Here, Callowhill is requesting a variance for the same size and type of sign that was at issue in *Callowhill I.* In *Callowhill I,* this Court held that the wall wrap was a sign for purposes of the Code and that Callowhill, after litigating the issue before the Board and the trial court, did not prove necessary hardship that would justify the grant of a variance to erect the sign. Callowhill, the City, SCRUB, and most of the Civic Groups were parties in *Callowhill I,* and they had the opportunity to appear and assert their rights. Further, the record does not demonstrate the existence of any substantial changes in the circumstances relating to the land itself, and the record establishes that the building is now, as it was in 2002, occupied by commercial tenants and is being put to profitable use.

As we observed in *Callowhill I,* Callowhill did not challenge the constitutionality of the Code before the Board; however, on

---

6. Callowhill argues that the Code is unconstitutional because it either excludes wall wrap signs or subjects them to height and size limitations that prohibit their use as a practical matter. Callowhill also asserts that the Code places content based restrictions on its right to free expression because the Code permits wall murals, which are permitted throughout the City as an unregulated use, and the Code forbids signs containing nonaccessory speech.

appeal to the trial court, Callowhill questioned the validity of the Code as a prior restraint on commercial speech and as exclusionary zoning, which are the issues Callowhill raises before us in the instant appeal. Although we affirmed the trial court's conclusion that those issues were deemed waived, it is clear that Callowhill could have raised its constitutional arguments in *Callowhill I*. As previously observed, Callowhill may not raise constitutional issues involving exclusionary zoning and freedom of expression in this appeal that it could have raised in *Callowhill I*.

We conclude that the elements of *res judicata* are satisfied here, precluding the Court from revisiting the questions of whether Callowhill is entitled to a variance and whether the Code's sign provisions are unconstitutional.[7]

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 9th day of August, 2010, the July 6, 2009, order of the Court of Common Pleas of Philadelphia is hereby affirmed.

The motion to quash is denied.

---

**7.** Callowhill argues that the City and Civic Groups waived the *res judicata* issue because the trial court did not discuss it and decided the case on the merits and because the City and the Civic Groups failed to take a cross appeal from the trial court's decision. However, because the City and the Civic Groups were not aggrieved by the trial court's order and had no basis to appeal, and because the *res judicata* issue was raised before the Board and the trial court, we conclude that it is properly before us.