## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brandywine Village Associates | : | |
| and L&R Partnership, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 164 C.D. 2017 |
| | : | Argued: December 7, 2017 |
| East Brandywine Township | : | |
| Board of Supervisors | : | |
| and Carlino East Brandywine, L.P. | : | |


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: January 5, 2018


In this confusing case, Brandywine Village Associates (BVA) and L&R Partnership (L&R) (collectively, Objectors) appeal the order of the Court of Common Pleas of Chester County (trial court) involving a decision by the Board of Supervisors (Board) of East Brandywine Township (Township) denying a preliminary plan filed by Carlino East Brandywine, L.P. (Developer) for the construction of a mixed-use development on a 10-acre parcel that it owns in the Township.

**I.**

**A**.

The Developer is the equitable owner of an undeveloped tract of land located at 1279 Horseshoe Pike in East Brandywine Township, Chester County, Pennsylvania, containing approximately 10.118 acres (Property). The Property was originally part of a 21-acre parcel. BVA owns the remaining 11 acres, which contain a shopping center adjacent to the east side of the Property.

Prior to the Developer's acquisition of the Property, BVA had certain rights to use the 10-acre parcel under a Cross Easement Agreement entered into with the Developer's predecessor-in-title. Because the entire 21 acres did not have access to any public sewer, the Cross Easement Agreement provided that BVA would build, at its expense, a sewer plant for the use of both parties on the 10-acre parcel. The Cross Easement Agreement also granted BVA an easement to the 10-acre parcel for stormwater management as well as an access easement to use the 10-acre parcel as a main entrance to BVA's shopping center.[1] L&R, the general partner of BVA, is the owner of an undeveloped parcel of land adjacent to the north side of the Property.

---

[1] Under the Cross Easement Agreement, the predecessor-in-interest granted BVA a sewer system easement to install an on-site septic sewer system, including a drainage area and reserve drainage area. It also provided an access easement to allow construction of a roadway through the Property to BVA property. The Cross Easement Agreement specified that the access drive could be modified, but that it must not "interfere with the flow of traffic . . . or with surface water drainage." (Reproduced Record (R.R.) at 47a.) The Cross Easement Agreement further provided a highway improvement easement, dedicating land within the ultimate right-of-way along Route 322 to public use, and a stormwater basin and drainage easement, which included a reserve effluent disposal area.

Since 2011, the Developer has submitted land-development plans to build a 51,525 square foot supermarket with a 9,250 square foot expansion area, a 4,600 square foot attached retail building, and a pad site for a 4,088 square foot bank on the Property. From the beginning, the Township insisted that the Developer provide and pay for the construction of a road (Connector Road) connecting the Property with Horseshoe Pike (Route 322) on which it fronts and North Guthriesville Road.

Because the Connector Road was to cross over L&R's adjoining property, in 2014, the Township and the Developer entered into a Memorandum of Understanding (MOU). Under this MOU, the Developer, in lieu of paying a significant portion of the Township's transportation impact fee of $1,795,000, was obligated to design, permit and construct at its expense the Connector Road and dedicate it to the Township. The MOU also provided that the Township would condemn necessary portions of L&R's adjoining property as well as BVA's easements on the Property granted under the Cross Easement Agreement.

**B.**

While the Developer has submitted a few different versions of land development plans pertaining to the Property, the plan subject to this appeal is the plan filed December 9, 2014 (2014 Plan). The Developer argues that even though the Connector Road will eventually be dedicated to the Township as a public road, it is currently a driveway and the Developer identified it as such in the 2014 Plan. The 2014 Plan also included the area under the "driveway" as part of the Developer's land area. The 2014 Plan did not identify the previously condemned

3

BVA easements on the Property. In January 2015, the Board conditionally approved the 2014 Plan. Objectors appealed to the trial court and the Developer intervened.

## C.

Among other things, Objectors alleged that the 2014 Plan contained many defects, including the following:

- It did not comply with the Township's Zoning Ordinance (Zoning Ordinance) requirement of a minimum 10-acre area to build a mixed-use development in a Mixed Use (MU) zoning district.[2]

- It did not comply with Section 399-46.C of the Zoning Ordinance, requiring that "[n]o building shall be situated less than 85 feet from the front lot line" because the bank building, as designed on the 2014 Plan, is set back 50 feet from the Connector Road. (R.R. at 593a.) Developer argued that Connector Road was merely a private driveway until such time as it is dedicated to the Township, and therefore, the 85-foot setback requirement is inapplicable.

- Even though the Property was going to be connected to the public sewer system, the 2014 Plan violated Section 399-47.K[3] of the Zoning Ordinance, providing that

---

[2] Section 399-46.A of the Zoning Ordinance provides that "[a] minimum gross tract area of 10 acres shall be required for any use or combination of uses permitted in the MU District." (R.R. at 593a.)

[3] Section 399-47.K of the Zoning Ordinance provides:

> Sewage facilities and water supply. The applicant's proposals for sewage facilities and for water supply (both quality and quantity) in relation to the proposed uses shall be in compliance with the requirements of §§ 350-47 and 350-48, respectively, of Chapter

**(Footnote continued on next page…)**

4

sewage facilities must be in compliance with the Township's Land Development Ordinance (SALDO), Sections 350-47.B(2)[4] & 350-48.[5] BVA argued that this provision was incorporated into the Zoning Ordinance and could not be waived.

- It did not comply with Section 399-81.E[6] of the Zoning Ordinance because Developer failed to provide safe and

_____

**(continued…)**

350, Subdivision and Land Development. Any approval of an application for development within the MU District shall be contingent upon the requisite approvals and certifications from the Chester County Health Department and/or the Pennsylvania Department of Environmental Protection.

(R.R. at 594a.)

[4] Section 350-47.B(2) of the SALDO provides in pertinent part:

All subdivisions and land developments shall be self-sustaining relative to the storage and disposal of treated sewage effluent. The applicant shall provide sufficient storage and land area on or off the subdivision or land development site to store and dispose of all treated sewage effluent which is generated by the uses on the site by means of conventional underground seepage beds or drip irrigation.

(R.R. at 616a.)

[5] Section 350-48 of the SALDO pertains to water supply.

[6] Section 399.81.E of the Zoning Ordinance provides that to minimize traffic congestion and encourage "orderly development of street highway frontage," an applicant is responsible for providing:

[S]afe and efficient ingress and egress to and from public streets, without undue congestion or interference with normal traffic flow within the Township. The developer shall be responsible for the design, construction, and costs of any necessary traffic control

**(Footnote continued on next page…)**

5

efficient ingress and egress from Route 322 over the combined Connector Road to BVA's shopping center.

- It did not comply with Section 399-47.N[7] of the Zoning Ordinance, regarding stormwater management.

Objectors then filed a motion for an additional evidentiary hearing, which the trial court granted, remanding the matter to the Board to take additional evidence. The Board conducted five hearings during which Objectors presented additional evidence in opposition to the 2014 Plan. In September 2015, because

---

**(continued…)**

devices and/or highway modifications required by the Township and/or the Pennsylvania Department of Transportation.

(R.R. at 598a-599a.)

[7] Section 399-47.N of the Zoning Ordinance provides:

The tract of land to be developed shall be in one ownership, or shall be the subject of an application filed jointly by the owners of the entire tract, and shall be under unified control. If ownership of the entire tract is held by more than one person or entity, the application shall identify and be filed on behalf of the said owners. Approval of the plan shall be conditioned upon agreement by the applicant or applicants that the tract shall be developed under single direction in accordance with the approved plan. If ownership of the tract changes subsequent to approval of the plan, no site preparation or construction by such new owner or owners shall be permitted unless and until such owner or owners shall review the terms and obligations of the approved plan and agree in writing to be bound thereby with respect to development of the tract.

(R.R. at 594a-595a.)

the parties disagreed as to the parameters of the Board's obligation following the conclusion of the hearings, the trial court issued an order requiring the Board to consider all evidence presented on remand and to make a decision based upon the entire record.

In a decision dated October 1, 2015, the Board reversed its prior decision granting conditional approval of the 2014 Plan. It did so because it found that the 2014 Plan was deficient in that it violated certain ordinance provisions dealing with street design, stormwater management and treatment of sewage effluent. The Board did not revisit other issues that Objectors raised regarding the defects in the plan.[8]

## D.

The Developer appealed the Board's revised decision for the 2014 Plan to the trial court. However, the parties agreed by stipulation that because Objectors had already appealed the Board's original order granting the 2014 Plan, they could raise all issues in the pending appeal. The stipulation provided:

> Because the October 1, 2015 decision is part of [Objectors'] Appeal, all parties have the right to brief and argue all issues of concern to them in [Objectors'] Appeal, including any raised by the October 1, 2015 decision and therefore there is no need for any party to separately file an appeal from the October 1, 2015

---

[8] While the remand hearings were taking place, prior to the Board's revised decision, in June 2015, the Developer filed a Final Land Development Plan, which it believed addressed objections to the 2014 Plan.

7

decision or intervene or further participate in any other appeal.

(R.R. at 137a-138a.) Pursuant to the stipulation, the Developer would withdraw its appeal. By order, the trial court adopted the stipulation as its own.

**E.**

On October 22, 2015, the Developer filed a new Preliminary/Final Land Development Plan (2015 Plan), which again included a Connector Road through the Developer's property and addressed the issues in the Board's revised opinion of October 1, 2015. The Board conditionally approved the 2015 Plan. Objectors appealed the Board's approval. However, the appeal of the 2015 Plan is not the subject of the current appeal. The trial court considered at oral argument whether the issues raised in that appeal, the appeal of the Board's initial approval of the 2014 Plan, were rendered moot by the Board's approval of the 2015 Plan. All parties urged the trial court to decide the case as a means of facilitating a resolution of recurrent issues common to both appeals, and the trial court agreed.

**F.**

Regarding the issues raised in this appeal, the trial court found as follows:

- **Setback requirement**: As to Objectors' contention that Developer's proposed bank building must be set back 85 feet from both Route 322 and the proposed Connector

8

Road,[9] the trial court found that the development tract is a single lot within the meaning of the Zoning Ordinance fronting on Route 322. It found that meant the proposed bank building is not required to be set back 85 feet from the Connector Road, only Route 322.

- **Minimum Lot Area**: Objectors contended that the 2014 Plan violated Section 399-46.A of the Zoning Ordinance, requiring that a development in a MU zoning district must have a minimum lot area of 10 acres because the area of the easements previously granted to BVA under the terms of the Cross Easement Agreement must be netted out from the gross tract area of 10.189 acres, leaving only a net lot area of 9.189 acres. The trial court rejected that argument because the Township's taking of BVA's easements on the Property did not take Developer's underlying fee simple so that the land could be counted as complying with the land area requirement.

- **Traffic**: Objectors also contended that the proposed Connector Road is of inadequate width to provide for safe and efficient ingress and egress for delivery trucks to enter and exit both the development and BVA's center, arguing that tractor trailers attempting to make required turning movements from Route 322 onto the Connector Road will be required to encroach on opposing travel lanes and raised concrete medians. Adopting the opinion of the Township engineer, the trial court found that

---

[9] Section 399-46.C of the Zoning Ordinance provides: "Minimum front yard. No building shall be situated less than 85 feet from the front lot line." (R.R. at 593a.) Pertinent terms are defined in Section 399-9 of the Zoning Ordinance. The term "lot" is pertinently defined as a "parcel of land, undivided by any street or dedicated future street right-of-way." (R.R. at 576a.) The front yard is defined as "[a] yard extending the full width of the lot, along the front lot line and extending in depth from the front lot line to the nearest point of a structure on the lot. . . ." (R.R. at 591a.) The Zoning Ordinance defines the term, "lot line" as "[a] property boundary line of any lot held in single and separate ownership. . . ." (R.R. at 577a.) A front lot line is defined as "[a] lot line abutting any street and coinciding with any street line." (R.R. at 577a.) The term "street line" is defined by the Zoning Ordinance in pertinent part as "[t]he dividing line between a lot and the outside boundary or right-of-way of a public street, road, or highway legally open or officially platted. . . ." (R.R. at 586a.)

Objectors did not prove the proposed access is either unsafe or inefficient and that the Board did not commit error in declining to deny the plan based upon that violation.

However, the trial court agreed with the Township that the plan was deficient in that it constricted the turning movements for tractor-trailers accessing the supermarket loading dock located at the rear of the Property. Ultimately, it went on to find that this issue could be rectified by adjusting the guardrails or an increase in the loading zone area.

- **Stormwater Management**: The trial court affirmed the Board's finding that the 2014 Plan violated Section 399-47.N of the Zoning Ordinance, requiring that stormwater facilities must be located on a tract of land under one ownership, because permanent stormwater facilities are shown as being outside the development tract owned by either Developer or the Township. The 2015 Plan depicted those facilities as located on L&R's land. It noted though that the 2015 Plan has been subsequently revised to locate those facilities within the area condemned by the Township for the Connector Road.

- **Sewage Effluent**: The trial court agreed with the Board that the 2015 Plan was deficient because it failed to provide the required effluent disposal area either on the development tract or elsewhere. However, it found that this was easily correctable because the new center will be connected to the public sewer system because the Board is empowered to grant a waiver from this SALDO regulation pursuant to Section 503(8) of the Pennsylvania Municipalities Planning Code (MPC)[10] upon meeting the standard for waiver.

---

[10] Section 503(8) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10503(8). This section provides:

> Provisions for administering waivers or modifications to the minimum standards of the ordinance in accordance with section § 512.1 when the literal compliance with mandatory provisions is

**(Footnote continued on next page…)**

However, the trial court disagreed with Objectors' argument that because Section 399-47.K of the Zoning Ordinance incorporates the SALDO provision, the MPC traditional zoning variance hardship standards apply rather than the waiver requirement within the MPC. The trial court found that argument meritless because the Zoning Ordinance merely references the necessity of a developer's compliance with the SALDO provision, but does not incorporate it into the Zoning Ordinance.

The trial court then issued the following order:

AND NOW, January 6 , 2017, upon consideration of [BVA and L&R['s]] . . . Appeal of the Conditional Approval of [Developer's] Preliminary Subdivision and Land Development Plan, Granted on January 21, 2015 by the [Board], the legal memorandums filed by able counsel, and following oral argument, it is ORDERED and DIRECTED that the said Appeal is Granted only in Part, but is otherwise Denied, consistently with and as specified in the findings, discussion and determinations made and detailed in the accompanying Opinion of the Court, which we incorporate in this Order.

(Record (R.) at No. 34, Opinion & Order by Ronald C. Nagle, SJ on 1-6-17.)

---

**(continued…)**

shown to be the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

53 P.S. § 10503(8).

Objectors then filed this appeal, arguing that the trial court erred in finding that: (1) the Developer did not violate the front-yard setback requirement in the Zoning Ordinance; (2) SALDO's requirement to set aside land for sewage effluent is not a zoning regulation by incorporation; and (3) the Developer met its burden to establish that its 2014 Plan provided safe and efficient ingress and egress.[11]

## II.

Initially, we must address the Township's request that this appeal be quashed because Objectors lack standing to bring this appeal. The Township argues that even though the trial court found against Objectors on most issues, and even though it did not specifically say so, the trial court effectively affirmed the Board's denial of the Developer's 2014 Plan because it found that certain aspects of the 2014 Plan were deficient. Accordingly, the Township contends:

> The real goal of both [Developer] and [Objectors], or course, is not to obtain a decision by this Court on the plan now before it; [Developer] has abandoned that plan, filed a new plan, and that plan is presently before the Court of Common Pleas. Instead, both developers hope that this Court will issue an ***advisory opinion*** giving direction to the Court of Common Pleas and the Board of Supervisors on the current land use plan, which is not yet before this Court. That this Court may not do.

---

[11] In a land use appeal, where a full and complete record was made and the trial court took no additional evidence, our scope of review is limited to determining whether the board committed an error of law or an abuse of discretion. *In re Brandywine Realty Trust*, 857 A.2d 714 (Pa. Cmwlth. 2004).

(Township's Response to Developer's Application for Leave to File Sur-Reply at 6) (emphasis in original) (citing *Commonwealth, Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014)).  The Developer does not join in the request.

If Objectors have, in fact, prevailed, the law is clear that only a party who is "aggrieved" by a decision has standing to appeal that decision.  Pa. R.A.P. 501; *ACS Enterprises, Inc. v. Norristown Borough Zoning Hearing Board*, 659 A.2d 651, 653 (Pa. Cmwlth. 1995).  A party is aggrieved when he or she is adversely, directly, immediately and substantially affected by a judgment, decree or order.  *Id.*  Thus, a party who has prevailed in the proceeding below is not an aggrieved party and, consequently, has no standing to appeal to this Court.  *Id.*  It is settled that a prevailing party that disagrees with the legal reasoning of an order or a court or agency or may have had a particular issue against it but is not adversely affected, lacks standing to appeal that order.  *Maple Street A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319 (Pa. Cmwlth. 2010).

We agree that Objectors were the prevailing parties below.  Because of deficiencies found in the 2014 Plan, the Board did not approve it, meaning that the Developer has no right to develop the Property.  Nonetheless, Objectors argue that they are aggrieved by the trial court's determinations because, in any future appeals, Objectors will be estopped from raising the issues the trial court decided against them.  However, collateral estoppel will not apply to those determinations because those purportedly adverse determinations against Objectors, as the prevailing party, were not "essential" to the judgment below.  *See Callowhill Center Associates, LLC v. Zoning Board of Adjustment*, 2 A.3d 802, 809 (Pa.

13

Cmwlth. 2010). In any event, the possibility of future litigation is not enough to establish a sufficient injury for the purpose of standing. *Empire Coal Min. & Development, Inc. v. Department of Environmental Resources*, 623 A.2d 897, 900 (Pa. Cmwlth. 1993).

Although Objectors disagree with the trial court's dismissal of many of their arguments, they were still the prevailing party in the decision below. What the parties sought before and seek from us is an advisory opinion. Accordingly, Objectors lack standing to appeal the trial court's January 6, 2017 order and decision to affirm the Board's denial of the Developer's 2014 Plan and, therefore, the appeal is quashed.[12]

_____
DAN PELLEGRINI, Senior Judge

---

[12] The Board also contends that the issue may be moot because Developer submitted the 2015 Plan since the inception of this appeal. The mootness doctrine requires that there is an actual case or controversy at all stages of review. *Pilchesky v. Lackawanna County*, 88 A.3d 954, 964 (Pa. 2014). An issue may become moot during the pendency of an appeal due to an intervening change in facts of the case. *In re Cain*, 590 A.2d 291, 292 (Pa. 1991). An issue is moot if in ruling upon the issue, the court cannot enter an order that has any legal force or effect. *Chruby v. Department of Corrections*, 4 A.3d 764, 770-71 (Pa. Cmwlth. 2010). However, even if an issue is technically moot, a court may still choose to hear the issue if any one of three exceptions apply: (1) the issue is a question of great public importance, (2) the issue is capable of repetition and apt to elude appellate review, or (3) a party to the controversy will suffer some detriment due to the decision of the trial court to dismiss on mootness. *Id.* at 771.

The trial court recognized a potential issue with mootness because the Developer had submitted another plan and that same plan was also the subject of an appeal. However, all parties urged the trial court to decide the case on the merits to resolve the ongoing dispute between the parties and reduce the number of future appeals. Because we do not know for certain what is in this new plan or what issues have been raised by the parties, we cannot determine whether the issue is moot or not.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates       :
and L&R Partnership,                :
             Appellants          :
                                 :
             v.                  :   No. 164 C.D. 2017
                                 :
East Brandywine Township            :
Board of Supervisors                :
and Carlino East Brandywine, L.P.   :

**O R D E R**

AND NOW, this 5th day of January, 2018, Appellants Brandywine Village Associates and L&R Partnership's appeal from the January 6, 2017 order of the Court of Common Pleas of Chester County in the above-captioned matter is quashed.

_____
DAN PELLEGRINI, Senior Judge