# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary Geiselman, Suzanne McConkey, :
Adrienne Johnson, and Devin Winand, :
                  Appellants :
                   :
           v. :    No. 805 C.D. 2020
                   :    ARGUED:  September 23, 2021
Hellam Township Board of Supervisors :
                   :
           v. :
                   :
WWBK Real Estate Holding, LLC and :
William and Wendolyn Hewitt :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge (P.)
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED:  October 20, 2021**

Objectors, neighboring landowners Gary Geiselman, Suzanne McConkey, Adrienne Johnson, and Devin Winand, appeal from an order of the Court of Common Pleas of York County.  The trial court denied Objectors' land use appeal and affirmed the decision of the Hellam Township Board of Supervisors granting an application for a conditional use to operate a Winery, Type B under Section 490-12(C)(30) of the Hellam Township Zoning Ordinance (Ordinance). (Ordinance § 490-12(C)(30).)  Applicants, WWBK Real Estate Holding, LLC, and William and Wendolyn Hewitt, are the equitable owners of the property located at

4865 Libhart Mill Road, Hellam Township,[1] and this is their third application for a conditional use at that location.[2] We affirm.

The facts as found by the Board are as follows.[3] Kreutz Creek runs through the subject property, located in what locals and Township personnel refer to as "Owl Valley." (Dec. 10, 2019 Board Decision, Finding of Fact "F.F." No. 3.) Zoned Rural Agricultural (RA), the property consists of 2 parcels: KK-15B (6 acres) and KK-17 (10.62 acres). (*Id*., Nos. 2 and 3.) Improved with a single-family home, a barn, and a garage, the property fronts on Libhart Mill Road, a public road from which ingress and egress occurs. (*Id*., No. 4.) "Both the house and the barn are situate in close proximity to Libhart Mill Road, with each being located 20 feet or less from the cartpath." (*Id*., No. 7.) In addition, less than 150 feet from the barn, there are at least 2 neighboring homes on Libhart Mill Road. (*Id*.) According to Hellam Township records, the property has been used for residential and agricultural purposes at least as far back as the 1970s. (*Id*., Nos. 4 and 5.)

In July 2019, Applicants filed the present application for conditional use approval. In addition to planting no less than two acres dedicated to wine crops, Applicants propose updating and renovating the existing buildings to accommodate

---

[1] The legal owner of the subject property is the Estate of Evamae B. Crist. (Dec. 10, 2019 Board Decision, Finding of Fact "F.F." No. 5.)

[2] In April 2019, appeals involving the two prior applications were argued seriately: *Hewitt v. Hellam Township Board of Supervisors*, (Pa. Cmwlth., No. 1342 C.D. 2018, filed June 26, 2019) ("*Hewitt I*") and *Hewitt v. Hellam Township Board of Supervisors*, (Pa. Cmwlth., No. 1518 C.D. 2018, filed June 26, 2019) ("*Hewitt II*"). In *Hewitt I*, we considered the original application to convert the existing barn into a wedding/event venue for 230 people. In *Hewitt II*, we considered a revised application proposing construction of a 55' x 90' accessory building toward the center of the property to host weddings and other events. We concluded that both applications were deficient for failure to meet the Ordinance's noise control requirements.

[3] The trial court did not take additional evidence. Consequently, we look to the Board's findings of fact.

2

the proposed Winery, Type B. (*Id*., Nos. 6 and 12.) "The house will be used for wine tastings, bridal parties, photo sessions, . . . and similar small events. The garage and the barn will be used for storage, farming operations[,] and wine-making operations." (*Id*., No. 6.) "Ingress and egress for the proposed use will continue to be from Libhart Mill Road, with a new entranceway to be constructed by . . . Applicants." (*Id*., No. 4.)

To accommodate larger winery events such as wedding receptions, Applicants plan to construct a building in the property's interior with a capacity of 300 people and parking facilities in front of and adjacent to that building for a total of 129 spaces and 4 spaces for disabled persons. (*Id*., Nos. 8 and 9.) "The new building [would] be located at least 400 feet from Libhart Mill Road and 375 feet from the Lang property to the west." (*Id*., No. 8.) None of the new parking facilities would be located in the floodplain, and Applicants plan to update and improve the landscaping to screen the new building and parking areas from neighboring properties. (*Id*., Nos. 10 and 18.) In addition, they plan to implement illumination consisting of either inward focused lights or dark-sky friendly lighting. (*Id*., No. 9.) Musical entertainment would be limited to the inside of the new building, with no outdoor concerts or other music events.[4] (*Id*., Nos. 14 and 15.) There would be an outdoor patio on the building's north side, which patrons could use as an outdoor seating area. The patio would be designed to limit the noise escaping the area and to direct it away from neighboring residences. (*Id*., No. 14.) To provide adequate water supply and sewage disposal for the upgraded property, they plan to construct a second well and additional septic system. (*Id*., No. 11.)

---

[4] The only outdoor activities allowed would be wedding ceremonies and events expressly permitted under Section 490-12(C)(30) of the Ordinance. (F.F. No. 15.)

In support of the application, Applicants submitted a written plan with "a detailed description of proposed winery events, sanitation provisions, [a] plan for noise control, an explanation of how amplified sound [would] be addressed, an explanation of how noise complaints [would] be addressed, and provisions for the control of lighting." (*Id.*, No. 19.) On weekdays, the hours of operation would be from noon until 8:00 or 9:00 p.m., with the closing extended to 10:00 p.m. on Fridays and Saturdays. (*Id.*, No. 14.) Sunday hours would be from noon until 5:00 p.m. (*Id.*) All outdoor winery events would end by 10:00 p.m. and indoor ones by 11:00 p.m. (*Id.*)

Following extensive hearings, the Board by a vote of three to two approved the application subject to the following conditions: (1) Applicants shall limit noise generated on the property during winery events to no more than 65 dBA at all adjoining property lines; (2) Applicants shall provide the Township with confirmation that they have obtained a limited winery license from the Pennsylvania Liquor Control Board, along with confirmation of a commercial trash contract before commencing any use of the property as a winery; and (3) Applicants shall take into consideration the historic nature of Owl Valley and historic features of the property and its existing structures in developing and improving the property. (*Id.* at 7.) On appeal, the trial court denied Objectors' land use appeal and affirmed the Board's decision. Objectors' appeal to this Court followed.

Objectors present the following issues: (1) whether the Board erred in determining that the principal use would be as a vineyard; (2) whether it erred in determining that proposed events would be winery events under the Ordinance; (3) whether it erred in determining that the proposed use complied with the definition of Winery, Type B; (4) whether it erred in determining that Applicants met all of the

4

criteria for a Winery, Type B conditional use set forth in Section 490-130.1(B) of the Ordinance, i.e., a detailed written plan addressing noise complaints, water supply, and sewage disposal; (5) whether it placed the proper burden of proof and production on the parties with respect to the general criteria for conditional uses set forth in Section 490-152(B)(2) of the Ordinance (proposed use shall not detract from use and enjoyment of adjoining or nearby properties) and Section 490-152(B)(3) of the Ordinance (proposed use will not effect a change in the character of the neighborhood); (6) whether it erred in determining that Applicants proved under Section 490-152(B)(2) of the Ordinance that the proposed use would not detract from the use and enjoyment of adjoining or nearby properties; and (7) whether it erred in determining that Applicants proved under Section 490-152(B)(3) of the Ordinance that the proposed use would not effect a change in the character of the neighborhood.

As a framework for considering these issues, we note that the main purpose of the RA zoning district is "to provide the opportunity to maintain the agricultural basis of the Township and the most productive soils for agricultural use and thus discourage the excessive conversion of farmland to nonagricultural use and protect the farmer from adverse impacts from the intrusion of nonfarm uses into agricultural areas." (Ordinance § 490-12(A)(1).) In that district, "[w]ineries are permitted only as an accessory use to the principal use of the property as a vineyard[.]" (*Id.*, § 490-130.1.) A "vineyard" is defined as "[g]round planted with grapevines cultivated for the purpose of commercially producing wine. A vineyard is an agricultural use where grapes and/or other wine-producing crops are grown." (*Id.*, § 490-11(C).)

5

As for wineries, the Ordinance provides for two different types:  a Winery, Type A, which is a permitted use in the RA zoning district, and a Winery, Type B, which is permitted only as a conditional use in that district.  (*Id*., §§ 490-2(B)(14) and 490-12(C)(30).)  In pertinent part, a Winery, Type A is defined as "[a] facility specially designed to allow processing of grapes and other fruit products or vegetables, to produce wine or similar spirits."  (*Id*., § 490-11(C).)  In a Winery, Type A, on-site sales of wine are not permitted.  A Winery, Type B encompasses the definition of Winery, Type A but "also includes retail and wholesale sales of wine, catering areas, banquet areas or rooms, halls, winery events, tours, picnic areas, food service and a tasting facility."  (*Id*.)  Applicants for a Winery, Type B must establish the following criteria under Section 490.130.1(B) of the Ordinance:

> A.     The minimum lot area shall be 10 acres.
>
> B.     At least 2 acres of the lot shall be planted with wine-producing crops.
>
> C.     The applicant must produce evidence of adequate water supply and sewage disposal.
>
> D.     For permitted activities, food service must be limited, with no interior seating dedicated solely to meal service and no food cooked to order.
>
> E.     Winery events must comply with various criteria set forth in Section 490-130.1(B)(4)(e), including adequate provision for noise and lighting control.

(Conclusion of Law "C.L." No. 2.)

## I.

Objectors first argue that the Board erred in determining that Applicants proved that the principal use of the property would be as a vineyard, with a winery as a permitted accessory use.  Instead, Objectors maintain that the record reflects

6

that the principal use would be as a winery. In addition, Objectors assert that the Board should be bound by its conclusion in the second application at issue in *Hewitt v. Hellam Township Board of Supervisors*, (Pa. Cmwlth., No. 1518 C.D. 2018, filed June 26, 2019) ("*Hewitt II*"), that "[t]he evidence presented confirms that the principal use of the property will be an event venue with wine producing agriculture as a secondary use." (Apr. 25, 2018 Board Decision, C.L. No. 4.B; Reproduced Record "R.R." at 748a.)

Objectors' arguments are without merit. As noted, a "vineyard" is broadly defined as "[g]round planted with grapevines cultivated for the purpose of commercially producing wine . . . [and] . . . an agricultural use where grapes and/or other wine-producing crops are grown." (Ordinance § 490-11(C).) In order to satisfy the criteria for a Winery, Type B, only 2 acres of a10-acre lot must be planted with wine-producing crops "on the same parcel of land which is permitted for and being utilized for agriculture." (*Id*., § 490.130.1(B)(2).) The Board found that Applicants plan to dedicate no less than two acres to wine crops. (Dec. 10, 2019 Board Decision, F.F. No. 12.) The remainder of the property not subject to development, excluding those two acres, would "remain available for agriculture and [would] continue to be farmed by tenant farmers." (*Id*.) In addition, the fact that permissible winery functions and activities do not seem overtly agricultural or vineyard-oriented is irrelevant. A Winery, Type B, which "includes retail and wholesale sales of wine, catering areas, banquet areas or rooms, halls, winery events, tours, picnic areas, food service and a tasting facility[,]"[5] is a permissible conditional use in an RA zoning district.

---

[5] (Ordinance § 490-11(C).)

7

Moreover, to the extent that Objectors' argument that Applicants should be bound by a determination in *Hewitt II* invokes *res judicata*, the doctrine does not apply. The four elements necessary for *res judicata* are (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality in the persons for or against whom the claim is made. *Callowhill Ctr. Assocs., LLC v. Zoning Bd. of Adjustment*, 2 A.3d 802, 809 (Pa. Cmwlth. 2010). Here, even though Applicants once again applied for a conditional use to operate a Winery, Type-B, it was appropriate for the Board to review their third application anew. The instant case involved a new application with modified terms and new hearings, witnesses, and evidence upon which the Board relied to render its decision. Accordingly, the elements of *res judicata* were not met. *See id*. at 809 (*res judicata* generally applied narrowly in zoning cases "because the need for flexibility outweighs the risk of repetitive litigation").

## II.

Objectors next contend that the Board erred in determining that Applicants' proposed events are winery events under the Ordinance, arguing that the proposed events are not the type of agritourism that meets the definition of a winery event because the intent of a conditional use as a Winery, Type B is to support the agricultural use of a vineyard. Alleging that Applicants plan to host bring-your-own-bottle (BYOB) weddings and other party-type events, Objectors maintain that the current application is an impermissible event center disguised as a vineyard.

Objectors' position is without merit. Contrary to Objectors' arguments, the definition of "winery event" encompasses "party-type" events *and* agritourism gatherings. The Ordinance defines a "winery event" as follows:

> A gathering or activity occurring at a predesignated time which is considered as an accessory function of a Type B

8

winery. These activities may include, but are not limited to: weddings, receptions, festivals, concerts, meetings, retreats and other agritourism gatherings which are intended to allow for the sampling and direct marketing and sales of wines produced on the premises or produced elsewhere. A winery event would not apply to regular walk-in tasting, retail sales or tours.

(Ordinance § 490-11(C).)

As the Board found: "In addition to weddings and other events, the Applicants intend to conduct retail and wholesale wine sales (subject to Pennsylvania Liquor Control Board approval), wine tastings and wine-making classes, winemaker dinners and similar winery-related events." (F.F. No. 17.) In addition, even though there appears to be nothing in the Ordinance prohibiting bringing other types of alcohol to winery events, the record reflects that Applicants do not plan to have BYOB events. Instead, they plan to have both their wine and other spirits for sale at winery events. As Mr. Hewitt testified:

> Q. [Attorney Lang] Now, Mr. Hewitt, would you agree that a BYOB event is not in and of itself an agricultural use?
>
> A. [Mr. Hewitt] Yes, BYOB is not agriculture, but you can have a BYOB private club, let's say, in an agricultural zone and still have agriculture growing.
>
> Q. Okay. Would you agree that a BYOB event is not in and of itself a normal farming practice?
>
> A. It's not a normal farming practice but we're not doing BYOB. We're going to be having, with limited wine laws, you're allowed to have wine. You're allowed to sell anything made in the state of Pennsylvania when it comes to beer and spirits. So it's not going to be BYOB.
>
> Q. So it's your testimony that none of the wedding receptions that you rent out will be BYOB. You're always going to be selling your wine there?

9

A. It's going to be wine and other alcohol made in the state of Pennsylvania, yes.

(Sept. 19, 2019 Hearing, Notes of Testimony "N.T." at 51-52; R.R. at 94a-95a.) Accordingly, the Board did not err in determining that the proposed events were permissible "winery events."

## III.

Objectors next argue that the Board erred in determining that the proposed use complied with the definition of Winery, Type B, alleging that Applicants failed to present evidence that the proposed use included "[a] facility specially designed to allow processing of grapes and other fruit products or vegetables, to produce wine or similar spirts." (Ordinance § 490-11(C).) Objectors point out that Applicants' proposed facility is the garage, which Objectors assert does not constitute a specifically designed facility.

Objectors' position is without merit. As noted, the Board found that Applicants plan to update and renovate existing buildings to accommodate the proposed use. (F.F. No. 6.) For a processing facility, they plan to retrofit the existing garage. As Mr. Hewitt testified:

> [O]ur [expert] consultants . . . are recommending that we do [the wine-making] in the garage. The garage is going to be large enough to handle it, because it's almost like a double garage the way it's built. And it's going to be large enough to be able to handle, at the beginning, four or five fermenters to be able to process the wine. And it's also going to be large enough to be able to do the bottling, corking, labeling, everything else that we would need to do when we first get started.

10

(Sept. 19, 2019 Hearing, N.T. at 37-38; R.R. at 80a-81a.) In addition, he testified that there was nothing special that needed to be done to place fermenters in the garage. (*Id*. at 40; R.R. at 83a.)

Even though the Ordinance requires a facility specially designed to allow processing, it does not prohibit retrofitting an existing building to accommodate that use. Here, the Board construed the requirement and determined that the proposed facility was compliant with the Ordinance. We decline to second guess its interpretation. *See Smith v. Zoning Hearing Bd.*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999) (a zoning hearing board's interpretation of its own ordinance is entitled to great weight and deference from a reviewing court).

**IV.**

Objectors next maintain that the Board erred in determining that Applicants met the criteria set forth in Section 490-130.1(B) of the Ordinance, specifically the requirements that a detailed written plan be submitted explaining how noise complaints will be addressed and that evidence be furnished regarding the provision of adequate water supply and sewage disposal.

We disagree. As the Board determined: "Applicants submitted with their Application a Written Plan for Winery Events which included a detailed description of proposed winery events, sanitation provisions, [a] plan for noise control, an explanation of how amplified sound [would] be addressed, an explanation of how noise complaints [would] be addressed, and provisions for the control of lighting." (F.F. No. 19.) Notably, the Written Plan details how noise complaints will be addressed. (Written Plan at 2-3; R.R. at 15a-16a.) In addition, Applicants presented the testimony of acoustics expert Christopher Brooks to explain the sufficiency of their noise control plan. He presented a study

11

summarizing sound readings and measurements taken at the property. "The study concluded that calculated levels of sound predicted to come from the [p]roperty will not exceed 75 dBA at the property lines, that sound from car door slamming will be 'trivial', and that the Applicants have a plan in place to control sound emanating from the [p]roperty." (F.F. No. 20.)[6]

As for adequate water supply and sewage disposal, the Board found that Applicants plan to construct a second well and an additional septic system. (F.F. No. 11.) Mr. Hewitt testified that Myers Well Service visited the property and determined the well capacity. In addition, he testified as to a planned second well, which, when combined with the existing well, would be more than adequate for the proposed use. (Sept. 19, 2019 Hearing, N.T. at 18-19, 34-35; R.R. at 61a-62a, 77a-78a.) In support, Applicants' engineer, Adam Anderson, opined that there was adequate water supply to meet the anticipated demand. (Oct. 3, 2019 Hearing, N.T. at 117-18, 135-36; R.R. at 251a-52a, 267a-68a.) Further, a "Site Investigation and Percolation Test Report for Onlot Disposal of Sewage" was provided with the application that established adequate sewage disposal on the property. (Report at 1-2; R.R. at 13a-14a.)

## V.

Objectors next maintain that the Board improperly shifted the burden to them to establish whether Applicants met the general criteria for a conditional use, asserting that the burden of proof should have remained with Applicants at all times. In support of this argument, they cite a footnote in our Supreme Court's decision in *EQT Production Company v. Borough of Jefferson Hills*, 208 A.3d 1010, 1023 n.10

---

[6] As noted above, the Board imposed a condition that required Applicants to limit noise generated on the property during winery events to no more than 65 dBA at all adjoining property lines.

(Pa. 2019), for the proposition that where an ordinance specifically assigns the burden of proof to meet the ordinance's general criteria to an applicant, the objectors have the burden only of production while the final burden of persuasion remains with the applicants. Therefore, Objectors contend that they merely had the burden to produce evidence that the proposed use would detrimentally affect the health, safety, and general welfare of the community, which they allege was satisfied via the testimony of their witnesses. However, the general criteria to which they point as placing the burden of proof on Applicants is not to disprove non-specific detrimental effects on health, safety, and welfare, but only to establish that the proposed use will not detract from the use and enjoyment of nearby properties or effect a change in the character of the neighborhood. These criteria are dealt with in Sections VI. an VII. below and as noted, the Board found that Applicants demonstrated compliance with them.

As to the possible effects on the general health, safety, and welfare, the Board did not err. In *Hewitt v. Hellam Township Board of Supervisors*, (Pa. Cmwlth., No. 1342 C.D. 2018, filed June 26, 2019) ("*Hewitt I*"), we set forth general legal principles that have not changed. In pertinent part, we stated:

> The applicable zoning ordinance provides the criteria upon which conditional uses are to be reviewed. Each ordinance differs, but usually they provide specific, objective criteria and general, subjective criteria. Whether a criterion is specific and objective or general and subjective determines which party bears the burden of persuasion. An applicant bears the initial burden of demonstrating that its proposed use meets the specific objective criteria of an ordinance. Once an applicant meets its prima facie burden, "a presumption arises the proposed use is consistent with the general welfare," and "the application must be granted unless the objectors present sufficient evidence that the proposed use has a

13

> detrimental effect on the public health, safety, and welfare." Whether a proposed use is a detriment to public health, safety, and welfare is an example of a general, subjective criterion.

*Hewitt I*, slip op. at 16 (citations omitted). Notably, "[t]he burden on the objectors to rebut the presumption that a proposed use is consistent with the general welfare is a heavy one." *Id*. (citation omitted).

In the present case, once Applicants presented plans that adequately met the requirements of the applicable ordinance provisions, the burden shifted to Objectors to demonstrate that the effects of the particular use would be greater or different than those results normally expected from the permitted use. *Ruddy v. Lower Southampton Twp. Zoning Hearing Bd.*, 669 A.2d 1051, 1057 (Pa. Cmwlth. 1995). In other words, Objectors then had the burden to establish that the impact of the use would be greater than that normally associated with this type of proposed use. *Marquise Inv., Inc. v. City of Pittsburgh*, 11 A.3d 607, 611 (Pa. Cmwlth. 2010).

Objectors failed to meet their heavy burden. The Board neither credited their witnesses nor concluded that their testimony was sufficient to establish that the traffic and noise from the proposed use would be greater than that normally associated with that type of use. (C.L. No. 5.) Though professionals in their respective fields, the neighbor-witnesses were not experts in the areas in which Objectors offered them as expert witnesses. These witnesses included (1) Christopher Monticchio, an applications engineer who testified as to noise and traffic impacts but did not employ accepted methodology; (2) Dr. Adrienne Johnson, a physician who opined as to the impact of noise and traffic but who was not trained in acoustic studies or in a medical field related to the impact of sound on human health; and (3) Michael Nazmack, a civil engineer and builder who commented

14

generally that the proposed use would cause increased traffic that, in turn, naturally would cause increased noise. (F.F. Nos. 24, 26, and 27.) As the Board determined, the testimony and/or evidence from these witnesses "was insufficient to allow the Board to determine either (a) that the proposed use will, with a high degree of probability, substantially affect the health and safety of the community, or (b) that the impacts of noise and traffic created by the proposed use are greater than that which normally flow from the proposed use." (C.L. No. 5.)

**VI.**

Objectors next maintain that the Board erred in determining that Applicants established that the proposed use would not detract from the use and enjoyment of adjoining or nearby properties as required by Section 490-152(B)(2) of the Ordinance. Specifically, Objectors emphasize the noise and traffic that the proposed use will generate.

There is no question that the proposed use may, to some extent, increase the traffic and noise level over that of the existing use. However, the proper comparison is not between the proposed and current uses but between the impact of the proposed use and that normally expected from the use allowed by the ordinance. By allowing a particular use as a conditional use, the governing body has determined that such use will not have an adverse impact on the public interest under normal circumstances. *Bailey v. Upper Southampton Twp.*, 690 A.2d 1324, 1326 (Pa. Cmwlth. 1997). By legislatively permitting a Winery, Type B as an accessory use to the primary use of a property as a vineyard in the Ordinance, the Board has legislatively determined that such use is presumptively consistent with the public health, safety, and welfare. To that end, the Board concluded that "Applicants have demonstrated sincere effort to minimize the impact of noise and traffic upon the

15

neighborhood, and that the noise and traffic impacts will be typical of those impacts anticipated with this type of use." (C.L. No. 5.) As the trial court observed, "[i]t is not for the Court to substitute its judgment for that of the Board." (July 17, 2020 Trial Ct. Op. at 13.) As fact finder, the Board is the ultimate judge of credibility and resolves all conflicts of evidence. *In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 339 (Pa. Cmwlth. 2001). Accordingly, Objectors' arguments are without merit.

**VII.**

Finally, Objectors maintain that the Board erred in determining that Applicants established that the proposed use would not effect a change in the character of the neighborhood as required by Section 490-152(B)(3) of the Ordinance. In support of their argument, Objectors primarily reference the testimony of their consulting historian, Randolph Harris, who testified as to the historic nature of the property and expressed concern that the proposed use would negatively and irreversibly impact the historic elements.

The Board did consider the historic aspects of the property but put little weight on Harris's concerns. In considering the historic nature of the property, the Board found: "Applicants have demonstrated that they will endeavor to protect and preserve the historic nature of the [p]roperty, and to augment it through select new construction intended to remain consistent with local historic architecture. [They] do not intend to demolish or alter any existing historic structures." (F.F. No. 25.) In addition, Applicants' acoustics and traffic experts testified that Applicants would be taking measures to minimize the impact of the noise associated with the proposed use and that the traffic generated would not be more than expected from a use of this nature. Finally, the Board concluded that Objectors failed to establish through the testimony of their witnesses that the use posed a detriment to public health, safety,

16

or welfare that was greater than ordinarily associated with the proposed use. (C.L. No. 5.)

## VIII.

Accordingly, we affirm.

                  _____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary Geiselman, Suzanne McConkey,   :
Adrienne Johnson, and Devin Winand,   :
Appellants   :
  :
  :
v.   :   No. 805 C.D. 2020
  :
Hellam Township Board of Supervisors   :
  :
v.   :
  :
WWBK Real Estate Holding, LLC and   :
William and Wendolyn Hewitt   :

# **O R D E R**

AND NOW, this 20th day of October, 2021, the order of the Court of Common Pleas of York County is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita