# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bill Haggerty, Ray Baldino and     :
Kevin McGinnis,     :
            Appellants     :
    :
    :
           v.     :
    :
Newtown Township Zoning Hearing     :
Board     :
    :
Earl and Margaret Ebling     :
    :
           v.     :
    :
Newtown Township Zoning Hearing     :    No. 50 C.D. 2020
Board     :    Argued: November 12, 2020


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: December 8, 2020


        Bill Haggerty (Haggerty), Ray Baldino (Baldino), and Kevin McGinnis (McGinnis) (collectively, Objectors) appeal from the Delaware County Common Pleas Court's (trial court) December 12, 2019 order (December 12, 2019 Order) dismissing their appeal from the Newtown Township (Township) Zoning Hearing Board's (ZHB) May 16, 2019 order (ZHB's May 2019 Order)[1] granting Earl and Margaret Ebling's (collectively, the Eblings) application for variance by estoppel

---

[1] Although the ZHB's May 2019 decision was reached at its May 16, 2019 meeting, the ZHB's written decision was issued on June 20, 2019. *See* Objectors' Br. App. A at 11-12; *see also* Objectors' Br. App. C at 1-3.

and affirming its October 20, 2017 order granting the Eblings a special exception (ZHB's October 2017 Order). Objectors essentially present two issues for this Court's review: (1) whether the ZHB erred by granting the Eblings a special exception; and (2) whether the ZHB erred by granting the Eblings a variance by estoppel.[2] After review, we affirm in part and reverse in part.

The Eblings owned and operated Earl E. Ebling, LLC Complete Landscaping (Business) from their home located at 311 North Newtown Street Road, Newtown Square in the Township. In 1963, the Eblings purchased the property located at 35 Walnut Street in Newtown Square known as Newtown Heights (Property), and relocated their home and Business there. The Property is located in a Residence (R-3) Zoning District. The Code of the Township of Newtown, Chapter 172, Zoning (Zoning Ordinance) does not expressly allow commercial landscaping businesses in R-3 Zoning Districts. *See* Zoning Ord. §§ 172.29.A, 172.33.A, 172.34.A (Reproduced Record (R.R.) at 496a-504a).

When the Eblings purchased the Property, Newtown Heights was a sparsely developed "wilderness," with a carpenter, a plumber and a roofer living and operating their businesses adjacent to the Property, and there was a commercial

---

[2] Objectors present five issues in their Statement of the Questions Involved: (1) whether the ZHB's October 2017 Order should be reversed because Earl E. Ebling, LLC Complete Landscaping (Business) was not permitted by special exception under the Code of the Township of Newtown, Chapter 172, Zoning; (2) whether the ZHB's October 2017 Order granting the Eblings a special exception should be reversed because the record lacked substantial evidence that the Business complies with the objective standards in the Zoning Ordinance; (3) whether the ZHB's May 2019 Order granting a variance by estoppel should be reversed where the parties agreed that the Business would terminate in 2012 and the Eblings have no undue hardship; (4) whether res judicata barred the Eblings from relitigating the variance by estoppel covered by the October 16, 1997 Stipulation and Agreement between the Township and the Eblings, where nothing material has changed and the Eblings received the full benefit of the Stipulation; and (5) whether the ZHB erred as a matter of law by capriciously disregarding facts and applicable legal standards. *See* Objectors' Br. at 7. Because these issues are subsumed in this Court's analysis of whether the ZHB erred by granting the special exception and the variance by estoppel, they have been combined and will be addressed accordingly herein.

nursery located approximately one block away.[3]  R.R. at 41a; *see also* R.R. at 43a, 47a, 50a-51a, 136a, 259a-262a.  Over the years, the Eblings acquired additional lots immediately adjacent to their Property, thereby increasing their lot size to its current 1.25 acres.  Objectors live in close proximity to the Property.

The Eblings have continuously operated the Business from the Property since 1963 (i.e., 57 years).  The Eblings use the Property to stage employees[4] and to store equipment consisting of heavy-duty pickup trucks, lawn mowers, a leaf vacuum, a chipper, and a small backhoe.  *See* R.R. at 85a, 265a-267a.  The equipment is kept in the storage garage and/or in a corral on the Property, and the Eblings planted buffer vegetation to shield it from view.  There is no customer activity at the Property, no mulch delivered or sold from the Property, no firewood split or sold from the Property, no wood chips are created, stored or sold from the Property, no nursery stock is grown at the Property, and only a small amount of nursery stock is kept at the Property for customer jobs.  *See* R.R. at 88a, 113a, 265a-266a, 283a.  Margaret Ebling does the Business's bookkeeping at the Property.

Beginning in 1967, after the Township's snowplow trucks broke down, the Township's Road Master hired the Business to provide snow plowing operations on Township roads using the Business's equipment stored and maintained on the Property.  In 1973, at Township Manager Dan Llewellyn's suggestion, the Eblings obtained a building permit and erected a detached garage on the Property to store the commercial landscaping equipment.  *See* R.R. at 60a, 119a-120a.  In 1975, the Business had 6 to 10 employees and 5 trucks.  By 1980, the Business had 8 to 12 employees and 6 trucks.

---

[3] Earl Ebling described that, when the Eblings purchased the Property in 1963, Walnut Street dead-ended in front of the Eblings' house and Locust Street ended "one house down" and "[a]ll the rest [were] woods."  R.R. at 259a.

[4] "[E]mployees come, retrieve the equipment and leave to go somewhere else to do the work of the Business[,]" then they return to drop off the equipment, get in their cars and leave at the end of the work day.  Ebling Br. at 5 n.4; *see also* R.R. at 22a, 85a, 88a-89a, 267a-268a.

3

In approximately 1983, Township Manager Paul West enlisted Earl Ebling's expertise to help draft the Township's public works landscaping bid specifications and three-year contract. Thereafter, the Township mailed an invitation to bid on that contract to the Business at the Property. The Township ultimately awarded the 1984-1986 contract to the Business, and paid the Business $75,800.00 under the contract. The Township also bid out its landscaping work for the 1987-1989 and 1990-1992 contract periods, invited the Business to bid, and awarded the contracts to the Business. The Township paid the Business $109,620.00 under the 1987-1989 contract, and $168,000.00 under the 1990-1992 contract. As of 1990, the Business had 12 to 15 employees and 20 pieces of equipment, which it needed to perform under the contract. The Township did not award the 1993-1995 landscaping contract to the Business, but did award the 1995-1997 landscaping contract to the Business and paid the Business $208,650.00 thereunder.

For each bid, Earl Ebling supplied the Township with the number of its employees and pieces of equipment to assure the Township of the Business's ability to perform the work. In addition to the landscaping contracts, the Business performed more than 20 other Township projects for which it was paid more than $20,000.00. The Township contacted the Business at the Property, all of the work for the Township was performed by the Business while it operated from the Property, and the Township sent its payments to the Property. *See* R.R. at 67a-68a, 172a, 300a-301a. The Eblings paid occupational privilege taxes to the Township, and applied for a contractor's license through the Township. *See* R.R. at 83a, 287a, 299a, 434a-437a.

On December 1, 1995, when the Business was under contract with the Township, the Township issued an enforcement notice (1995 Enforcement Notice) to the Eblings for them to cease and desist from operating the Business from the

Property, which the Township later withdrew.[5]  However, on December 13, 1996, the Township issued another enforcement notice (1996 Enforcement Notice), again directing the Eblings to cease and desist from operating the Business from the Property.[6]  The Eblings appealed, and a hearing was held before the ZHB on May 29, 1997.

At the hearing, the Township's Building Inspector/Zoning Officer Ronald McHatton and Township Manager Larry Comunale acknowledged that the Eblings had operated the Business from the Property prior to 1995 without having been cited, and that the Township had contracted with the Business since 1984.  *See* R.R. at 22a, 26a, 158a-159a, 168a-173a.  Earl Ebling testified that the Eblings made five additional land purchases over the years in reliance on their ability to conduct the Business at the Property.[7]  *See* R.R. at 91a-93a, 98a, 112a, 288a.  He stated that he had no reason to believe his use of the Property was improper until 1995.  *See* R.R. at 48a, 50a, 114a-116a.  Earl Ebling further declared that buying or renting land to relocate the Business "would put [him] out of business[,]" and the Eblings' real estate expert agreed that moving the Business would create a substantial financial hardship.  *See* R.R. at 99a-102a, 123a-128a.  Several neighbors, including Haggerty, testified at the hearing on the Eblings' behalf in favor of the Business.  *See* R.R. at 135a-156a, 187a-195a, 343a-344a.  Other residents testified in opposition to the

---

[5] In 1995, the Township received a petition from several residents complaining about the Eblings' and other Township residents' commercial uses of their Newtown Heights properties.  *See* R.R. at 159a-161a.  The Township withdrew the 1995 Enforcement Notice "because the Township [] and the Board of Supervisors decided to study its Zoning Ordinance as it related to home businesses."  R.R. at 166a.

[6] The 1996 Enforcement Notice was issued while the Business was under contract with the Township to provide landscaping services.

[7] The Eblings' deeds reflect the following purchases: August 1963 ($13,500.00), January 1966 ($750.00), May 1967 ($600.00), June 1972 ($2,250.00), June 1977 ($ illegible), and July 1982 ($15,000.00).  *See* R.R. at 388a-393a.

Business use at the Property due to noise and traffic. *See* R.R. at 174a-182a, 195a-198a.

On October 16, 1997, the Township and the Eblings entered into a Stipulation and Agreement (Stipulation) that authorized the Eblings to continue to operate the Business at the Property, subject to the following conditions:

> 1) For a period of fifteen (15) years from the date on which this Stipulation is approved by the [ZHB,] the Property shall be permitted to be used not only for residential purposes[,] but also for the operation of [the Business] as such currently exists and operates at the Property. Thereafter, the use of the Property for the operation of [the Business] shall cease unless the Township extends the time period for the continuation of such use or unless such use of the Property becomes classified as permissible by applicable zoning law.
>
> 2) No more than [f]ifteen (15) employees will be employed at the [Business] at the Property (which number shall include [the Eblings]).
>
> 3) No additional equipment beyond that currently in use in connection with the [Business] shall be kept at the Property other than replacement equipment of a substantially similar type, such new equipment as may be developed in the future to the extent such new equipment does not significantly alter the existing operation or its appearance, and miscellaneous equipment which does not significantly alter the existing operation or its appearance. . . . [List of then-used equipment attached as Schedule A].
>
> 4) Equipment and supplies currently stored in the large garage located on the Property when not in use shall continue to be stored there. Items stored outside shall be arranged to minimize their visibility from the street.
>
> 5) [List of the Business's trucks, associated trailers and plows permitted to be used and parked at the Property]. No additional trucks shall be used in the [B]usiness at the Property. The [B]usiness trucks shall be parked in parking areas so as to minimize their visibility from the street.

6) Most off[-]season equipment shall be stored off premises until time to begin seasonal use.

7) No chipping, splitting or storing of wood or chips (other than storage of residential firewood for personal use) shall take place on the Property.

8) Customers shall not be allowed to come to the Property to conduct business.

9) Traffic entering and exiting the Property shall be evenly split between Pine Street and Chestnut Street.

10) Without committing or obliging themselves to any action or conduct of any kind, [the Eblings] will continue to conduct the [Business] with concern for any complaints and suggestions of their neighbors and will respond promptly to them.

11) If the Ebling family ceases to be associated with the [Business] at the Property or family members no longer reside at the residence [on] the Property[,] then the use of the Property for the operation of a landscaping business shall cease within 30 days[,] unless the Township extends the time period for the continuation of such use or unless such use of the Property becomes classified by applicable zoning law as permissible.

12) During the period in which the Property shall be permitted to be used for the operation of the [Business,] and while such operation is conducted consistent with this [Stipulation], the [T]ownship shall refrain from pursuing any action to halt or prevent that use, either in whole or in part, and shall not challenge the continuation of any aspect of the current use of the Property in connection with the operation of [the Business].

13) If either party regards the other as acting inconsistently with this [S]tipulation, such party shall not take any action against the other unless the other party has failed to cure any inconsistent conduct within thirty (30) days after receiving written notice thereof.

R.R. at 384a-386a. The ZHB accepted the Stipulation by October 24, 1997 order. *See* R.R. at 383a.

In 2005, the Township adopted Business Registration Ordinance 2005-06, that required business owners operating in the Township to register with the Township. *See* R.R. at 422a. The Township did not send an application to the Eblings to register the Business, nor did the Township enforce the Zoning Ordinance against them. In April 2013, the Township began sending the Eblings applications to register the Business, which the Eblings completed and submitted with the applicable fees for the years 2013, 2014, 2015, 2016 and 2017. *See* R.R. at 305a-315a, 418a-440a.

On May 17, 2017, the Township's Director of Code Enforcement/Zoning Officer sent the Eblings a letter informing them that they had to file a special exception application with the Township to continue to operate the Business at the Property. The Eblings filed an application with the Township on June 14, 2017, seeking to extend the Stipulation or, in the alternative, a special exception, a variance by estoppel, equitable estoppel or vested rights, or a variance to allow the Business's continued operation from the Property (Application). *See* R.R. at 376a-440a.

The ZHB conducted a hearing on the Application on September 21, 2017. *See* R.R. at 224a-375a. The Township did not appear at the hearing or present evidence. Earl Ebling admitted that the Eblings were not familiar with zoning and, thus, did not check the Property's zoning when they purchased it in 1963. *See* R.R. at 261a-262a. He claimed that the Eblings would not have purchased additional parcels or built the garage if they had known they were not permitted to operate the Business at the Property. *See* R.R. at 291a.

The Eblings testified that they believed the Business could continue operation at the Property after the Stipulation's 2012 expiration as long as they

8

continued to abide by the Township's conditions, and because the Township issued licenses for the Business at the Property each year thereafter. *See* R.R. at 286a, 303a-305a, 309a, 311a. Earl Ebling also declared that the Eblings have fully abided by the Stipulation's conditions, and the Property has not changed since before 1997. *See* R.R. at 256a-257a, 269a, 289a-290a. The Eblings and their son, Ed Ebling, agreed that, if the Township was to extend the Stipulation, they would agree to the same terms, including a "drop-dead" 15-year dissolution date. R.R. at 293a, 320a.

The Eblings contended that they would be forced to dissolve the Business if they could no longer operate from the Property, thereby rendering 12 employees (including 4 who have worked for the Business for 37-38 years) unemployed, and approximately 120 customers without service (70% of whom are located in Newtown Square). *See* R.R. at 293a, 299a-300a, 320a. Real estate broker Barbara Mastronardo testified that there were no properties in commercial districts in the Newtown Square, Edgmont or Marple areas where the Eblings could relocate the Business (even if they could reduce their operation to half an acre) and, even if land was available, it would cost approximately $1 million per acre. *See* R.R. at 325a-329a.

In addition, Haggerty testified at the September 21, 2017 hearing that he has lived next to the Property for 30 years, he understood the Stipulation expired after 15 years, and would like the area to be residential again. *See* R.R. at 345a-347a. McGinnis testified that, although he did not object to the Business 15 years ago, it has grown, his property value has decreased by $50,000.00, and other small contractors have sprung up in the neighborhood because the Township allowed the Business. *See* R.R. at 347a-351a. Baldino testified that the neighborhood has become a business district. *See* R.R. at 352a-353a. Intervenor neighbor Mary Ellen Bowman (Bowman) testified that the Township is not doing its job by allowing

9

businesses to operate in that area. *See* R.R. at 353a-359a. Other neighbors testified in support of the Application. *See* R.R. at 359a-370a.

At its October 19, 2017 meeting, the ZHB voted to grant the Eblings a special exception subject to, *inter alia*, the following conditions: (1) "Said special exception will expire upon the termination of the landscaping business held by the [Eblings'] son, Ed Ebling[;[8]]" and (2) "[a]ll company vehicles need to be out of said property by 7:30 a.m. and back by 3:30 p.m. (or after 4:30 p.m.) so as not to disrupt school buses and other traffic." *See* Objectors' Br. App. A at 2; *see also* R.R. at 222a. The ZHB's October 2017 Order was issued the next day. *See* Objectors' Br. App. A. The ZHB did not address a variance by estoppel. Objectors and the Eblings appealed from the ZHB's October 2017 Order to the trial court.[9]

After reviewing the record, on February 11, 2019, the trial court remanded the matter to the ZHB for further proceedings to: (1) consider the evidence, take additional evidence, and render a decision regarding the Eblings' entitlement to a variance by estoppel to continue to operate the Business at the Property; and (2) take evidence regarding the size and scope of the Business permitted by the ZHB's October 2017 Order to operate, consider mitigating measures that may be appropriate given the location of the Business, and to better define the expiration and termination of the Business as it concerns Ed Ebling. *See* Objectors' Br. App. B (Remand Order).

The ZHB conducted a remand hearing (Remand Hearing) on April 18, 2019, pursuant to the trial court's order. *See* R.R. at 441a-492a. The Eblings did not offer additional evidence at the Remand Hearing, but agreed to terminate the Business operation at the Property at the end of 15 years, even in the event the ZHB

---

[8] Ed Ebling testified at the September 21, 2017 hearing that the Business will end with him because he has no children. *See* R.R. at 371a.

[9] On August 15, 2018, the trial court consolidated the appeals and allowed Bowman to intervene.

10

granted a variance by estoppel. *See* R.R. at 476a-478a. Baldino testified regarding his concern for truck traffic dangers, particularly for school buses, and strangers coming and going from the Property. *See* R.R. at 457a-464a. McGinnis reiterated his prior claim that his property value has decreased. *See* R.R. at 465a-474a. On May 16, 2019, the ZHB voted to affirm its October 2017 Order granting the special exception and also granted the Eblings a variance by estoppel. *See* Objectors' Br. App. C (ZHB's May 2019 Order) at 1-3.

In its written decision issued on June 20, 2019, the ZHB declared, in pertinent part:

> [T]he [Eblings'] request for a variance by estoppel to continue the operation of [the Business] in a residential neighborhood is approved. However, said relief expires fifteen (15) years from October 19, 2017 [(i.e., October 20, 2032),] which supersedes the relief granted in 2017. In addition, the [ZHB] confirms its granting of the previously approved special exception subject to the following conditions:
>
> 1. The [Eblings are] bound to any representations, agreements or testimony set forth at the hearing and to any specific conditions set forth in this Order. Noncompliance or violation of any of these conditions will void the relief herein granted.
>
> . . . .
>
> 5. [The Eblings] . . . shall abide by all conditions agreed to during the course of the [p]ublic [h]earing and reflected in the notes of testimony of said [h]earing, and the same are herein incorporated by reference.
>
> 6. The [ZHB] reserves the right to change, alter or amend any condition of this Order upon application to it by [the Eblings] and without the need for a public hearing, if, in the opinion of the [ZHB], such change, alteration or amendment is consistent with this Order as a whole.

7. All company vehicles need to be out of said property by 7:30 a.m. and back by 3:30 p.m. (or after 4:30 p.m.) so as not to disrupt school buses and other traffic.

8. The variance by estoppel relief expires fifteen (15) years from October 19, 2017.

9. Commercial vehicles are not to be parked in the residential neighborhood streets.

Findings of Fact and Conclusions of Law will be drafted shortly.

It is the decision, of the [ZHB], that each and every condition aforesaid is an integral part of the relief granted and if any condition is removed or violated in any way, the variance by estoppel would not have been granted.

Objectors' Br. App. C at 1-3.

Thereafter, the ZHB issued Amended Supplemental Findings of Fact and Conclusions of Law, wherein the ZHB concluded:

[T]he [Eblings] satisfactorily proved the elements of 'variance by estoppel' as the [Eblings] (at all relevant times hereto) acted in good faith and relied innocently upon the validity of the [B]usiness use throughout the proceeding; that the [Eblings] made substantial expenditures in reliance upon their belief that the [B]usiness use was permitted; that there was an extended period of time in which the [T]ownship did not enforce the [Z]oning [O]rdinance and/or acquiesced to the [B]usiness use; and that a denial of the variance would impose an unnecessary hardship on the [Eblings].

Objectors' Br. App. C (ZHB's Amended Supplemental Findings of Fact and Conclusions of Law) at 3.

Objectors appealed from the ZHB's May 2019 Order to the trial court, and the Eblings and the Township intervened. Without taking additional evidence, on December 12, 2019, the trial court issued an "Order Dismissing Zoning Appeals and Confirming [the ZHB's May 2019 Order] with Conditions," with numerous

12

detailed findings of fact and conclusions of law. Objectors' Br. App. D (December 12, 2019 Trial Ct. Op.) at 1.

Objectors appealed to this Court. The trial court ordered Objectors to file a Concise Statement of the Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), which they did. On March 30, 2020, the trial court filed an opinion in support of its December 12, 2019 order (Rule 1925(a) Opinion). *See* Objectors' Br. App. E.

## Discussion

Preliminarily, Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC)[10] provides, in relevant part:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence . . . . If the record below includes findings of fact made by the [zoning hearing board] whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the [zoning hearing board] shall not be disturbed by the court if supported by substantial evidence.

53 P.S. § 11005-A. Accordingly, this Court has explained:

> Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the [ZHB] committed an error of law or 'a manifest abuse of discretion.' *Valley View Civic Ass*[*']n v. Zoning B*[d.] of Adjustment*, . . . 462 A.2d 637, 639 ([Pa.] 1983). A zoning [hearing] board abuses its discretion 'only if its findings are not supported by substantial

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A.

13

evidence.' *Id.* at 640. Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Id.*

*Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 504 n.1 (Pa. Cmwlth. 2018).

In the instant matter, where a complete record was made before the ZHB and the ZHB made findings of fact, conclusions of law and issued an order with conditions,[11] it is unclear why the trial court likewise did so. The trial court stated in the Remand Order:

> 1. This consolidated [a]ppeal is hereby REMANDED to the [ZHB] for further proceedings, as determined necessary by said [ZHB] . . . :
>
> A. To consider the evidence, and hear such additional evidence and render a decision on the entitlement of [the Eblings], to a variance by estoppel to continue the operation of their landscape [B]usiness in a residential neighborhood; and
>
> B. In the presentation and consideration of the variance by estoppel, the [p]arties and/or [ZHB], as appropriate, shall present and or consider evidence, and make relevant findings, regarding defin[ing] the size and scope of the landscaping [B]usiness which it permitted in its October 20, 2017 Order, consider any mitigating measures

---

[11] This Court has defined a 'full and complete record' as 'a complete and accurate record of the testimony taken so that the appellant is given a base [sic] upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented.' *In re: Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006) . . . (citations omitted). Only if the trial court determines that the record before the agency is incomplete, does it have discretion to hear the appeal *de novo* or remand to the local agency.

*Kuziak v. Borough of Danville*, 125 A.3d 470, 475 (Pa. Cmwlth. 2015).

which may be appropriate given the location of the landscaping [B]usiness in a residential neighborhood, and to better define the expiration and termination of the operation of the landscaping [B]usiness in the residential neighborhood as it concerns the cessation of involvement and participation of the son of [the Eblings], Ed Ebling in the landscape [B]usiness[.]

3. [sic] All parties to this appeal shall be parties below, including [Haggerty], [Baldino], [McGinnis], [Bowman], [the Eblings], and [the] Township.

4. [sic] This [trial c]ourt retains jurisdiction over the consolidated appeals and, after the decision of the [ZHB] on remand, any of the parties listed in Paragraph 3 may recommence this appeal by filing an amended Notice of Appeal within 30 days of the remand decision.

5. [sic] The [ZHB] shall reinstitute any public hearing on this matter with[in] ninety (90) days of the date of this Order.

Remand Order at 1-2. It did not appear that the trial court intended that the ZHB was to take additional evidence as a hearing officer on the trial court's behalf.

Nevertheless, in its December 12, 2019 opinion, the trial court concluded, in relevant part:

23. The Eblings have established their right to a variance by estoppel by clear, precise and unequivocal evidence.

24. In the decades which followed the establishment of their [Business] at the Property, the Eblings have innocently and in good faith relied upon the Township's unparalleled active acquiescence in supporting the validity of the operation of [the] Business on and from the Property.

. . . .

27. By not only allowing, but contributing to and facilitating the Ebling[s'] Business on and from the Property for a period now reaching close to 57 years, the Township without question engaged in a course of active

15

acquiescence necessary to satisfy the requirements of variance by estoppel.

28. The events and circumstances confirm that the Eblings not only acted innocently and in good faith in establishing and continuing their Business at the Property, but are entitled to equitable relief to continue the Business at the Property. This [trial c]ourt finds that 'compelling facts' and the circumstances surrounding a municipality's role in perpetuating a landowner's commercial use of residentially-zoned [P]roperty for 36 years could not be ignored, results [sic] in a finding that the landowner maintained a vested right to continue commercial use of [the P]roperty in a residential zoning district, with reasonable conditions to preserve the character of the neighborhood.

29. Based upon the unique circumstances involved in this case, as discussed above, the Eblings have unquestionably met and far surpassed the burden necessary to permit the awarding of a variance by estoppel necessary to permit the continued operation of their Business operation at the Property.

. . . .

31. The uncontroverted evidence presented before th[e ZHB] in 2017, including the testimony . . . both in 2017 and 2019, confirms that the Eblings fully complied with the terms of the Stipulation without exception and without complaint.

32. The [ZHB] made the proper determination that the Eblings were entitled to a [s]pecial [e]xception to continue operation of their Business on and from the Property, subject to the remand condition that the operation of the Business would permanently cease within 15 years calculated from October 19[], 2017.

33. Under the unique facts and circumstances of this case and upon the record before the [ZHB], the [ZHB's] decision is overwhelmingly supported by the record with the reasonable required conditions, further set forth herein of the Eblings that the operation of the Business on and from the Property will cease in 15 years from October 19[], 2017.

16

December 12, 2019 Trial Ct. Op. at 12-14 (footnote omitted).

Moreover, the trial court's order contained the following conditions:

1) Compliance with the terms and conditions of the stipulated order dated October 24, 1997[,] and Stipulation dated October 16, 1997[,] unless said condition[s are] modified or clarified by this Order, or inconsistent with this Order, in which case, the terms set forth in this Order will control;

2) The variance by estoppel, and the corresponding operation of the [B]usiness shall expire and cease on the earlier of either [Ed Ebling,] who currently runs the [B]usiness either ceasing to work for the [B]usiness or fifteen years from [the] October 19, 2017 hearing, that being October 20, 2032[,] and shall not be extended or renewed; nor that the variance 'runs with the land[;]'

3) Consistent with the 1997 [s]tipulated [o]rder, the [B]usiness should also terminate if the [Eblings] or Ed Ebling no longer reside at the [P]roperty;

4) All company vehicles leaving the [P]roperty for the work day must depart the [P]roperty by 7:30 a.m. and shall not return between the hours of 3:30 p.m. or 4:30 p.m. to avoid conflicts with school bus traffic;

5) In addition, the [B]usiness must comply with the following additional representations made by Earl Ebling at the September 21, 2017 hearing:

 a) No mulch, wood chips, or firewood (other than mulch or wood for personal use, or small amounts of mulch for nursery stock on the [P]roperty), shall be delivered to, stored or sold from the [P]roperty;

 b) Nursery stock shall not be grown on or sold from the [P]roperty and no retail sales from [P]roperty;

 c) Nursery stock that is delivered to or stored on the [P]roperty shall not exceed the approximate 30'x30' area currently used;

17

d) Any equipment not stored in the garage shall be maintained in the existing corral which will [be] maintained and not expanded;

e) employee vehicles shall be parked on the [P]roperty not streets, roadside or shoulder of roads;

f) Business will only be conducted Monday through Friday, no weekends, with the exception of snow removal that shall be permitted with no exception;

g) Existing vegetative buffers existing on the [P]roperty must remain as necessary. If requested by code enforcement[,] the buffer and border areas shall be supplemented, replanted and re-enforced to safeguard the privacy of properties;

h) No additional buildings or structures will be constructed in connection with the [B]usiness.

December 12, 2019 Trial Ct. Op. at 15-16.

Problematically, the trial court did not order the remand because there was not a full and complete factual record of the ZHB's proceedings. Rather, since the ZHB's October 2017 Order only addressed the special exception portion of the Eblings' Application, the trial court remanded the matter for the ZHB to determine whether the Eblings were entitled to a variance by estoppel.[12] At the April 2019 Remand Hearing, the ZHB incorporated and referred to testimony from the prior hearings, took very limited testimony and, although no new facts were introduced, issued supplemental findings and conclusions. Because the trial court did not take additional evidence or hear the appeal *de novo*, it should not have issued its own findings of fact, conclusions of law and conditions.[13] Accordingly, this Court will

---

[12] In their brief, Objectors represented that the ZHB conceded its failure to address the variance by estoppel and "requested that the [trial court] remand the matter so it could consider the appropriate standard." Objectors' Br. at 14.

[13] Where, as here, a record includes the zoning hearing board's findings of fact and the trial court does not take additional evidence, it exceeds the confines of its appellate review by adopting

limit its review to whether the ZHB erred as a matter of law or abused its discretion by granting a special exception and a variance by estoppel.[14]  *Pequea Twp.*

### (1) The ZHB's October 2017 Order – Special Exception

Objectors argue that the ZHB erred by affirming the ZHB's October 2017 Order granting the Eblings a special exception.  They specifically assert that the ZHB's October 2017 Order should be reversed because the Business was not permitted by special exception under the Township's Zoning Ordinance, and because the record lacked substantial evidence that the Business complies with the objective standards in the Zoning Ordinance.  Objectors further claim that the ZHB erred as a matter of law by capriciously disregarding facts and applicable legal standards.

> Generally speaking, '[**a**] **special exception is** not an exception to a zoning ordinance, but rather **a use which is expressly permitted**, absent a showing of a detrimental effect on the community.' *Manor Healthcare Corp. v. Lower Moreland* [*Twp.*] *Zoning Hearing* [*Bd.*], . . . 590 A.2d 65, 70 ([Pa. Cmwlth.] 1991). In other words, as stated in our seminal decision in *Bray v. Zoning Board of Adjustment*, . . . 410 A.2d 909, 911 ([Pa. Cmwlth.] 1980)[:] 'The important characteristic of **a special exception is that it is a conditionally permitted use,** [and] legislatively **allowed if the standards are met**.'  This Court recently explained that an applicant for a special exception has both the duty of presenting evidence and the burden of persuading the [ZHB] that the proposed use satisfies the objective requirements of the zoning ordinance for the grant of [a] special exception.

the role of factfinder, and "generally may be precluded from making its own findings . . . ." *Sowich v. Zoning Hearing Bd. of Brown Twp.*, 214 A.3d 775, 785 (Pa. Cmwlth. 2019) (quoting *Koutrakos v. Zoning Hearing Bd. of Newtown Twp., Del. Cnty.*, 685 A.2d 639, 642 (Pa. Cmwlth. 1996)).

[14] Notably, Objectors properly presented their issues in terms of whether the ZHB erred.

*Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018) . . . .

*Vineyard Oil & Gas Co. v. N. E. Twp. Zoning Hearing Bd.*, 215 A.3d 77, 85 (Pa. Cmwlth. 2019) (original emphasis omitted; emphasis added).

> Once the applicant meets these burdens, a presumption arises that the use is consistent with the health, safety and general welfare of the community. The burden then normally shifts to the objectors of the application to present evidence and persuade the [zoning hearing b]oard that the proposed use will have a generally detrimental effect.[15]

*MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 553 (Pa. Cmwlth. 2014) (quoting *Greaton Props. v. Lower Merion Twp.*, 796 A.2d 1038, 1045-46 (Pa. Cmwlth. 2002)).

In the instant matter, special exceptions are governed by Section 172.13 of the Zoning Ordinance. *See* R.R. at 493a-495a. Section 172.13.A(1) of the Zoning Ordinance mandates that "the applicant shall show . . . [t]hat his application falls within the provision of this chapter which accords the applicant the right to seek a special exception." Zoning Ord. § 172-13.A(1) (R.R. at 493a). Therefore, as a threshold matter, an applicant's use must be expressly permitted by the Zoning Ordinance.

Section 172-34.A of the Zoning Ordinance lists the following permitted uses in the Township's R-3 Zoning Districts:

---

[15] "The burden that is placed upon the objectors requires more than mere speculation of possible harm." *Thompson*, 896 A.2d at 679. Rather, the law requires that "objector[s] must prove to a high degree of probability that the impact from the proposed use will substantially affect the health, safety and welfare of the community to a greater extent than would be expected normally from that type of use." *Blancett-Maddock v. City of Pittsburgh Zoning Bd. of Adjustment*, 6 A.3d 595, 600 (Pa. Cmwlth. 2010). Moreover, this Court has consistently held that protection of neighborhood aesthetics and property values are insufficient bases upon which to deny special exceptions. *Wyomissing Area Sch. Dist. v. Zoning Hearing Bd. of Wyomissing Borough*, 128 A.3d 851 (Pa. Cmwlth. 2015).

Permitted uses.  A building may be erected or used and a lot may be used or occupied for any of the following purposes and no other:

> (1) Any use permitted in R-2 Residence Districts.

> . . . .

> (3) The provisions of [Section] 172-29[.]A(1)[-](3) [of the Zoning Ordinance] also apply.[16]

Zoning Ord. § 172-34.A (R.R. at 501a).  Uses that are expressly permitted in R-2 Zoning Districts include "[a]ny use permitted in R-1 Residence Districts."  Zoning Ord. § 172-33.A(1) (R.R. at 499a).  Uses expressly permitted in R-1 Zoning Districts include "[a] building . . . erected or used and a lot . . . used or occupied for any of the following purposes and no other:" (1) single-family detached dwellings; schools, churches, religious or philanthropic uses when authorized as special exceptions; nonprofit clubs when authorized as special exceptions; tilling of soil; municipal buildings and municipal uses; and accessory uses on the same lots with and customarily incidental to the foregoing permitted uses.[17]  Zoning Ord. § 172-29.A(1) (R.R. at 496a).  Landscaping businesses are not expressly permitted in the Township's R-1 Zoning Districts and, thus, are not uses permitted in the Township's R-3 Zoning Districts, by special exception or otherwise.

Because the Eblings' Application did not meet the threshold criteria that their Business use is expressly permitted in the Township's R-3 Zoning Districts, the Eblings did not establish the elements necessary for the ZHB to grant

---

[16] Section 172-29.A of the Zoning Ordinance authorizes the following listed permitted uses "and no other[,]" Zoning Ord. § 172-29.A(1): cluster development communities with conditional use approval, *see* Zoning Ord. § 172-29.A(2); and "[c]onditional uses . . . processed pursuant to Article IV.  [Amended 11-11-1985 by Ord. No. 1985-13]."  Zoning Ord. § 172-29.A(3).

[17] Accessory uses exclude business uses, except for the following: single-story garages, professional offices and no-impact home businesses by special exception; parking; accessory buildings; signs; and domestic and other animals.  *See* Zoning Ord. § 172-29.A(1) (R.R. at 496a-497a).

them a special exception. Accordingly, the ZHB erred as a matter of law by concluding that the Eblings' evidence was sufficient to satisfy the Zoning Ordinance's special exception requirements.[18]

### (2) The ZHB's May 2019 Order - Variance by Estoppel

Objectors also argue that the ZHB erred by granting a variance by estoppel. Specifically, Objectors contend that the ZHB's May 2019 Order should be reversed because the parties agreed that the Business would terminate in 2012, the Eblings have no undue hardship, and res judicata barred the Eblings from relitigating the variance by estoppel covered by the October 16, 1997 Stipulation. Objectors further claim that the ZHB erred as a matter of law by capriciously disregarding facts and applicable legal standards.

"A variance by estoppel is an unusual remedy and is granted only in the most extraordinary of circumstances." *Springfield Twp. v. Kim*, 792 A.2d 717, 721 (Pa. Cmwlth. 2002). This Court has explained:

> There are four factors relevant to whether a [zoning hearing board] should grant a variance by estoppel.
>
> > Such variances are appropriate when a use does not conform to the zoning ordinance and the property owner establishes all of the following: (1) a long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use; (2) the landowner acted in good faith and relied innocently upon the validity of the use

---

[18] Even if the Business use was expressly permitted in an R-3 Zoning District, the ZHB did not analyze whether the Eblings proved that such use satisfied the general standards for special exceptions in Section 172-13.C of the Zoning Ordinance, *see* Zoning Ord. § 172-13.C (R.R. at 493a-494a), and the specific standards for special exceptions in Section 172-13.D of the Zoning Ordinance, *see* Zoning Ord. § 172-13.D (R.R. at 494a-495a).

> throughout the proceeding; (3) the landowner has made substantial expenditures in reliance upon his belief that his use was permitted; and (4) denial of the variance would impose an unnecessary hardship on the applicant.
>
> *Borough of Dormont v. Zoning Hearing Bd. of Borough of Dormont*, 850 A.2d 826, 828 (Pa. Cmwlth. 2004) (citations omitted).

*Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1212 (Pa. Cmwlth. 2009). "For [a]pplicants to prevail under a variance by estoppel theory, they must prove the essential factors by clear, precise and unequivocal evidence." *Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009).

In the instant matter, the ZHB granted the variance by estoppel until October 20, 2032, concluding that the Eblings satisfied all four factors. Relative to the first factor, the ZHB concluded that "that there was an extended period of time in which the [T]ownship did not enforce the [Z]oning [O]rdinance and/or acquiesced to the [B]usiness use[.]" ZHB's Amended Supplemental Findings of Fact and Conclusions of Law at 3.

"Municipal inaction in enforcing an ordinance, without more, cannot support the granting of a variance." *Klanke v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 477 A.2d 907, 909 (Pa. Cmwlth. 1984). Rather, active acquiescence requires an affirmative act by the municipality, such as "granting a building permit or reasonably leading a landowner to conclude his use was lawful." *Pietropaolo*, 979 A.2d at 981.[19]

---

[19] In *Pietropaolo*, this Court affirmed the township zoning hearing board's denial of a property owner's appeal from an enforcement notice requiring the owners to cease use of their residentially zoned property for a landscaping business. The owners argued, *inter alia*, that the zoning hearing board had erred in denying their variance by estoppel request. In finding that the owner failed to demonstrate that the township actively acquiesced in the use, the *Pietropaolo* Court explained:

Here, the record evidence established that the Eblings have owned the Property and continuously, and openly, operated the Business therefrom since 1963 (i.e., 57 years). In 1963, the Township hired the Business for snow removal. In 1973, the Township issued the Eblings a permit to build a garage after the Township Manager recommended they store the Business's equipment therein. In 1983, the Township Manager enlisted Earl Ebling's assistance in drafting bid specifications for the Township's landscaping contract. Thereafter, the Township contracted with the Business for its landscaping needs for 12 years (i.e., 1984-1992, 1995-1997), paying the Business approximately $580,000.00 for those services and other miscellaneous jobs during that time period. The Eblings even increased their staff and added equipment in order to meet the Township's contract specifications. At all times, the Business invoiced the Township from the Property, the Township sent its payments to the Business at the Property, the Eblings paid occupational privilege taxes and Earl Ebling held a contractor's license related to the Business through the Township.

---

[I]n cases where this Court granted a variance by estoppel, the municipalities did not passively stand by. Rather, they committed an affirmative act, for example, granting a building permit or reasonably leading a landowner to conclude his use was lawful. *See, e.g., Knake v. Zoning Hearing Bd. of Dormont,* . . . 459 A.2d 1331 ([Pa. Cmwlth.] 1983) (variance by estoppel granted where borough failed to act for 44 years, knew the use was impermissible for 27 years, *and issued a building permit for the impermissible use*); *Three Rivers Youth v. Zoning Bd. of Adjustment of* [*the*] *City of Pittsburgh,* . . . 437 A.2d 1064 ([Pa. Cmwlth.] 1981) (inaction by municipality for seven years *plus issuance of building permit by municipality* and reliance by landowner on zoning officer's interpretation of regulation); *Twp. of Haverford v. Spica,* . . . 328 A.2d 878 ([Pa. Cmwlth.] 1974) (inaction by municipality for 36 years *and issuance of building permit where municipality knew of intended construction*).

*Pietropaolo*, 979 A.2d at 981 (emphasis in original).

24

Until it issued the 1995 Enforcement Notice to the Eblings, the Township had not enforced the Zoning Ordinance against them and, even then, the Township withdrew that action. Moreover, after the Township issued the 1996 Enforcement Notice, the Township entered into the Stipulation, which allowed the Eblings to continue to operate the Business from the Property for another 15 years. The Eblings fully abided by the Stipulation's conditions. Although the Township did not expressly extend the Stipulation, Township representatives began to send the Eblings business registration applications in 2013, and they have registered the Business with the Township ever since.[20] In May 2017, in response to information received from the Township's Director of Code Enforcement/Zoning Officer, the Eblings filed a special exception application with the Township to continue to operate the Business at the Property. Accordingly, record evidence supported the ZHB's findings and conclusions that the Township failed for a long period of time to enforce the law, when the Township knew of the violation and actively acquiesced in the use.[21]

Regarding the second variance by estoppel factor, the ZHB concluded that, "at all relevant times hereto[, the Eblings] acted in good faith and relied innocently upon the validity of the [B]usiness use throughout the proceeding[.]" ZHB's Amended Supplemental Findings of Fact and Conclusions of Law at 3.

---

[20] Objectors argue that the Eblings' registering of the Business could not have extended the Stipulation because the Township and the ZHB are segregated entities. However, the Township Solicitor executed the Stipulation on the Township's behalf, *see* R.R. at 386a, and the ZHB accepted the Stipulation by October 24, 1997 order. *See* R.R. at 383a. Thus, long before the Township Manager requested the Eblings to register the Business, both the Township and the ZHB were fully aware that the Township could extend the Stipulation.

[21] Objectors further argue: "The use of this [P]roperty, since October 24, 1997, has been under the authority of the Stipulation. It was not due to acquiescence." Objectors' Br. at 29. However, "acquiescence" is defined at Merriam-Webster.com as "passive acceptance or submission." https://www.merriam-webster.com/dictionary/acquiescence (last visited 12/7/2020). Certainly, *actual* acceptance by Stipulation exceeds the minimum *passive* acceptance threshold required for a variance by estoppel.

Objectors contend that the Eblings "are not good faith applicants because they were the subject of a prior enforcement action, failed to inquire as to the zoning when they first started, and then specifically agreed to cease the use if given 15 years to come into compliance." Objectors' Br. at 34-35. This Court acknowledges that "a landowner is duty-bound to check the zoning status of a property prior to purchase [and, w]here a landowner fails to review the relevant zoning ordinance before purchasing a property, he may not advance the resulting ignorance in support of a variance by estoppel." *Hafner*, 974 A.2d at 1212.

Here, the Eblings testified that they were ignorant of zoning matters and did not ascertain the Property's zoning status prior to purchasing it. However, because, in the 1997 Stipulation, the Township expressly authorized the Business to continue to operate at the Property thereafter, the portion of *Hafner* prohibiting a variance by estoppel for an owner who does not check an ordinance before commencing his/her use does not apply. Moreover, "the good faith contemplated for the application of [a variance by] estoppel to zoning matters centers on a landowner's innocent belief that the use of land is permitted at the time [of the municipality's acquiescence]." *Victory Gardens, Inc. v. Warrington Twp. Zoning Hearing Bd.*, 224 A.3d 1110, 1118 (Pa. Cmwlth. 2020).[22]

The Township accepted the Business use at the Property in 1997 by Stipulation. The Eblings operated the Business at the Property in strict compliance with the Stipulation. Moreover, the Eblings have always gone to great measures to ensure that the neighbors did not suffer any detriment because of the Business, even

---

[22] Although equitable estoppel (i.e., where a property owner relies on a municipality's intentional or negligent misrepresentations regarding an illegal use), *see Victory Gardens, Inc.*, rather than a variance by estoppel (i.e., where municipal action or inaction amounts to active acquiescence to an illegal use), was before the *Victory Gardens, Inc.* Court, because the factors for both are similar, its reasoning is applicable here.

before they were aware it was not permitted.[23]  In fact, the only complaint against the Business was brought after 34 years, and was resolved by an agreement that expressly permitted it to continue operating for 15 years (i.e., 2012), and beyond if "the Township extend[ed] the time period for the continuation of such use . . . ." R.R. at 384a.  The record supports that the Eblings reasonably believed the registration certificates the Township issued for the Business thereafter authorized the Business to continue, and they have operated the Business in compliance with the Stipulation since 1997.  Objectors did not present any evidence to the contrary.

Further, rather than seeking permission for a variance by estoppel in perpetuity that would allow them to expand the Business operation, the Eblings request only to continue the operation as it currently exists for a limited additional time period so they do not have to close the Business and put 12 long-standing employees out of work.  Under these specific circumstances, this Court agrees that the record evidence supported the ZHB's findings and conclusions that the Eblings acted in good faith and relied innocently upon the validity of the Business use at the Property since 1997 and, thus, met the second factor.

Relative to the third variance by estoppel factor, the ZHB concluded that the Eblings "made substantial expenditures in reliance upon their belief that the [B]usiness use was permitted[.]"  ZHB's Amended Supplemental Findings of Fact and Conclusions of Law at 3.  The undisputed record evidence reflected that, over the years, the Eblings purchased five additional parcels of land, purchased and erected a large garage, and cleaned and landscaped the Property, not only to accommodate the equipment, but to avoid imposing on their neighbors.  The Eblings also added equipment and staff necessary to conduct work under the Township's

---

[23] A significant majority of the neighbors testified in support of the Eblings' continued operation.  Objectors did not present any evidence to support their claims that the Eblings' employees or traffic going to and from the Property are a hazard to the community.

landscaping contracts. Earl Ebling testified that the Eblings would not have undertaken these steps if they had known they could not conduct the Business at the Property. Accordingly, record evidence supported the ZHB's findings and conclusions that the Eblings made substantial expenditures in reliance upon their belief that the Business use was permitted at the Property.

Regarding the fourth variance by estoppel factor, the ZHB concluded that "denial of the variance would impose an unnecessary hardship on the [Eblings]." ZHB's Amended Supplemental Findings of Fact and Conclusions of Law at 3. This Court has explained:

> [U]nlike the considerable hardship burden placed on an applicant in a traditional variance application, the hardship required to apply equitable estoppel may take the form of the loss of expenditures made in reliance on a municipality's misrepresentation or the loss of sources of income that would result from the enforcement of a zoning ordinance. *See Dombroski v. Dallas Twp. Zoning Hearing Bd.* (Pa. Cmwlth.[] No. 1050 C.D. 2018, filed May 21, 2019),[24] slip op. at 15 . . . (loss of expenditures to convert first floor of building to apartment and continued rental income satisfied the hardship requirement for the application of equitable estoppel); *Vaughn* [*v. Zoning Hearing Bd. of Twp. of Shaler*, 947 A.2d [218,] 225 [(Pa. Cmwlth. 2008)]] (finding that substantial expenditures to build a retaining wall and the anticipated cost of removal of the wall satisfied the hardship requirement for the application of equitable estoppel).

*Victory Gardens, Inc.*, 224 A.3d at 1116 (footnotes omitted).

The Eblings testified that they purchased five additional parcels of land in order to operate the Business without disrupting the neighbors, built the large garage exclusively to hold the Business's equipment, hired additional employees and

---

[24] Pursuant to Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported panel decisions of this Court, issued after January 15, 2008, may be cited for their persuasive value.

28

acquired new equipment to meet the Township's landscaping contract requirements, and paid to register the Business each year. In addition, the continued employment of the Business's staff (at least a third of whom have worked for the Business in excess of 37 years) would be jeopardized. The Eblings further stated, and their real estate expert agreed, that there are no comparable properties available in the Township or the immediate surrounding communities to which the Business could be relocated and, even if there were, the cost to buy or rent the necessary land (even half the Property's size) and pay the utilities, would put the Eblings out of business. Accordingly, record evidence supported the ZHB's findings and conclusions that denying the variance would impose an unnecessary hardship on the Eblings. *See Victory Gardens, Inc.*

Finally, Objectors claim that res judicata barred the Eblings from relitigating the variance by estoppel covered by the Stipulation. This Court has explained:

> The doctrine of res judicata is applied 'sparingly' in zoning cases. *Harrington v. Zoning Hearing Bd. of E. Vincent Twp.*, . . . 543 A.2d 226, 228 ([Pa. Cmwlth.] 1988). This is because 'zoning is a continuing regulation and flexibility in zoning matters outweighs the risk of repetitive litigation.' *Schubach v. Silver*, . . . 336 A.2d 328, 333 ([Pa.] 1975) (quotation marks omitted). Res judicata applies if the following elements concur:
>
> > (1) the identity of the thing sued for; (2) the identity of the cause of action; (3) the identity of the persons and parties to the action; and (4) the identity of the quality in the persons for or against whom the claim is made, and then, only if there are no substantial changes in circumstances relating to the land itself.
>
> *Callowhill Ctr. Assocs., LLC v. Zoning Bd. of Adjustment*, 2 A.3d 802, 809 (Pa. Cmwlth. 2010).

Further, res judicata 'subsumes' collateral estoppel. *Id.* This doctrine applies if: (1) the issue previously decided is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) there was a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Id.*

*Fowler v. City of Bethlehem Zoning Hearing Bd.*, 187 A.3d 287, 294-95 (Pa. Cmwlth. 2018).

In the instant matter, the Township and the Eblings agreed to the 1997 Stipulation after the Eblings appealed from the 1996 Enforcement Notice. Because the Stipulation did not reference or acknowledge any Zoning Ordinance violation by the Eblings, it did not represent a final judgment on the merits of the 1996 Enforcement Notice. Moreover, neither the 1996 Enforcement Notice nor the Stipulation involved or referenced a variance by estoppel. Rather, the first ruling on the variance by estoppel was the ZHB's May 2019 Order. Because the issues were not identical and the Stipulation was not a final judgment on the merits, res judicata did not apply, and the Stipulation did not preclude the ZHB from granting a variance by estoppel.

Because substantial record evidence supports the ZHB's conclusions of law that the Eblings met the requirements for a variance by estoppel, the ZHB did not err or abuse its discretion by granting them one.

**Conclusion**

Based on the foregoing, because the ZHB erred by granting the Eblings a special exception, the portion of the trial court's order affirming the ZHB's October

2017 Order is reversed.  Because the ZHB properly granted the Eblings a variance by estoppel, the trial court's order affirming the ZHB's May 2019 Order is affirmed.


_____
ANNE E. COVEY, Judge


Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bill Haggerty, Ray Baldino and
Kevin McGinnis,
                Appellants

        v.

Newtown Township Zoning Hearing
Board

Earl and Margaret Ebling

        v.

Newtown Township Zoning Hearing    :    No. 50 C.D. 2020
Board

O R D E R

AND NOW, this 8th day of December, 2020, the portion of the Delaware County Common Pleas Court's (trial court) December 12, 2019 order affirming the Newtown Township Zoning Hearing Board's (ZHB) October 20, 2017 order is REVERSED. The portion of the trial court's December 12, 2019 order affirming the ZHB's May 16, 2019 Order is AFFIRMED.

_____
ANNE E. COVEY, Judge